Herbert O. JENSEN, Donald J. Eugene,
and all inmates of the North Dakota
State Penitentiary, Applicants,

v.

Winston SATRAN, Warden, North Dako-
ta State Penitentiary, Respondent.

Cr. No. 758.

Supreme Court of North Dakota.

March 25, 1981.

Herbert O. Jensen, pro se, and Donald J.
Eugene, pro se.

Edwin F. Zuern, Sp. Asst. Atty. Gen.,
Bismarck, for respondent.

PEDERSON, Justice.

Herbert Jensen and Donald Eugene are
North Dakota State Penitentiary inmates[1]
who applied to the District Court of Bur-
leigh County for a writ of habeas corpus.
The court denied the application and this
appeal followed. While a final decision in a
habeas corpus matter is not appealable, we
may treat the attempted appeal as an appli-
cation to this court's original jurisdiction
for a writ. *LePera v. Snider*, 240 N.W.2d
862, 867 (N.D.1976); Article VI, Section 2,
North Dakota Constitution. We have con-
cluded that the application be denied.

Citing the case of *Bounds v. Smith*, 430
U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977),
the applicants contend that the inadequacy
of the penitentiary law library, in both its
selection of materials and the rules govern-
ing its use, denies them reasonable access to
courts. The *Bounds* case held that "the
fundamental constitutional right of access
to the courts requires prison authorities to
assist inmates in the preparation and filing
of meaningful legal papers by providing
prisoners with adequate law libraries or ad-
equate assistance from persons trained in
the law." Obviously a dispute in any given
case can be reduced to defining the word
"adequate." *Bounds* expressly left state
authorities with much discretion in formu-
lating delivery techniques. The court was
not specific as to what constitutes an ade-
quate library, the only clear requirement
being "compliance with constitutional stan-
dards." *Bounds, supra*, 97 S.Ct. at 1500.
With this rather vague imperative in mind
we turn to the particulars of the applicants'
complaints.

The first issue relates to the sufficiency
of the penitentiary law library's holdings,
which are as follows:[2]

---

1. The applicants purport to speak on behalf of
all the inmates of the penitentiary, yet they
have not complied with Rule 23, NDRCivP.
Therefore we shall consider the issues raised
only as they relate to the applicants.

2. The following materials will be provided
when a new budget begins in July, 1981:
   1. Shepards, United States Citations.
   2. Shepards, Federal Citations.

1. The complete Corpus Juris Secundum with current supplements.

2. The North Dakota Century Code with current supplements.

3. The complete United States Code Service with current volumes and supplements.

4. North Dakota Session Laws from 1969 to the present.

5. A Raden Law Dictionary.

6. A two-volume Manual of Criminal Forms by Baily & Rothblatt.

7. A Manual of Federal Practice by Shepard.

8. A complete set of U. S. Supreme Court Reports.

9. The North Western 2d Reporter from 1966 to the present.

10. The Federal Supplement Reporter from 1973 to the present.

11. The Federal Reporter (2d Series) from 1973 to the present.

12. Recent advance sheets of the Federal Rules Decisions and Pacific 2d Reporter.

13. Some unbound Shepard's for the Federal Reporters and North Western 2d Reporter.

Applicants have submitted a compilation published by the American Association of Law Libraries and entitled "Recommended Collections for Prison and Other Institution Law Libraries." The prison library of course does not contain every item listed. However, it is our judgment that the recommended collection represents a combination of luxury and redundancy,[3] and we are not inclined to elevate it to the level of a constitutional minimum.

■ The prison library certainly provides much useful core material as the above inventory discloses. The inclusion of Corpus Juris Secundum should largely compensate for the library's lack of blackletter hornbooks. In addition, inmates may acquire legal materials not in their library. The director of institutions will, upon request, photocopy the material at the State Library and send it to the inmate. Thus the entire State Law Library used by this court is ultimately available if necessary. According to the warden's brief, the materials requested and photocopied are indexed and filed at the prison for future use.[4] We believe these resources are sufficient to provide the applicants meaningful access.

Applicants allege that they have made requests which have been refused. Specifically, it appears they have asked for a copy of the North Dakota State Administrative Code (or some parts of it) and some first series issues of American Law Reports (A.L. R.). The denial of these materials, according to applicants, points up a larger infringement upon their right to access: each request must be approved by house counsel for the director of institutions. Applicants charge this procedure creates a conflict of interest inasmuch as the same attorney will ordinarily represent the warden in any action by the inmates.

■ First, with regard to the State Administrative Code and the old A.L.R.s, these publications are not among those recommended by the above-mentioned American Association of Law Libraries. Thus they cannot be justified even by the applicants' own rather generous standards. Second, applicants have done nothing to demon-

---

3. Shepards, North Western Citations.
4. The volumes of the North Western 2d Reporter required to complete the set already in the library.

**3.** The recommended collection includes the following: three different law dictionaries; four separate manuals on legal research; a national prison directory; three separate books on rights of prisoners; ten separate books on criminal law and procedure; two books on defenses in narcotics cases; a book entitled "What To Do When Your Bills Exceed Your Paycheck"; seven separate guides to jailhouse lawyering; hornbooks on torts and contracts. In fairness to the Association we must say that many of the items are listed alternatively or disjunctively, not cumulatively. This, however, does not alter our impression of the recommended collection. We suspect that many of this state's practicing criminal attorneys do not have nearly what the Association recommends.

**4.** It should be noted that over 1,500 pages of material were photocopied and sent to the prison between July 1980 and February 1981.

strate harm resulting from the alleged conflict of interest. Nothing has been denied them except the Administrative Code and the A.L.R.s, and we agree with the district court's finding that no need for these has been shown. Reasonable regulations governing the procurement and use of legal materials by prisoners are defensible and even necessary. *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980). Screening requests for legal materials is reasonable for it can benefit the inmate as well as save official time and expense. When the screening is done by a legal professional, as it is here, an informed judgment can be made that will save the inmates' and the court's time. It will help assure that research is directed to contemporary, relevant materials and that arguments ultimately presented in the forum are appropriate and applicable to the case. Far from hindering the inmate's access, this screening can greatly facilitate it. In any event, we reiterate that in this instance no examples of actual harm have been presented.[5]

■ Finally, applicants allege that certain rules governing the use of the prison law library unnecessarily impede access to courts. The practices to which the applicants object are: 1) That the library is open for use for only 30 hours per week, and 2) that a maximum of four inmates may be in the library at any one time. Again, reasonable regulations are permissible and, again, applicants have failed to show specifically just how these policies have hampered their legal activities. The 1980 average prison population was 231, which would allow for just over one-half hour of library time per prisoner per week. Obviously not all inmates will have a weekly need for library materials. In addition, it was brought out in oral argument to this court that an inmate facing some deadline or other pressing circumstances can make special arrangement to use the library outside of regular hours.

There are other particulars which have received our consideration. The warden's brief makes mention of a "legal concepts and research" training seminar which was conducted at the penitentiary by local attorneys under the auspices of Legal Assistance of North Dakota, and which was attended by the applicants. Although personal legal assistance, alluded to in *Bounds* as an alternative to a law library, is not provided, prison telephone logs reflect an average of five inmates per day contacting attorneys. We conclude that the applicants are not being deprived of their right to meaningful access to courts. The very fact that Jensen and Eugene appeared personally before this court belies their claim to the contrary.

The application for a writ of habeas corpus is denied.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

5. It would enhance the appearance of justice if the Director of Institutions would designate an individual or a committee to review requests for copying, other than counsel who will appear regularly in court in opposition to the demands of a prisoner.