**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**Craig E. HOLDEN, Defendant and Appellant.**

**Cr. No. 930341.**

Supreme Court of North Dakota.

Oct. 3, 1994.

Paul H. Fraase, Asst. City Atty., Bismarck, for plaintiff and appellee.

Thomas A. Dickson, Bismarck, for defendant and appellant.

SANDSTROM, Justice.

A jury found Craig Holden guilty of driving under the influence of alcohol. Holden appeals from the judgment of conviction, contending a Highway Patrol officer should have been removed from the jury for cause, and the case should have been dismissed or an adverse-inference instruction given because a law enforcement videotape was missing. We affirm.

I

On February 6, 1993, a Bismarck police officer arrested Craig Holden for driving under the influence of alcohol. Holden's field sobriety tests were videotaped. The case was removed to County Court, and a jury trial demanded.

During voir dire, Holden used his last peremptory challenge to remove a Highway Patrol officer the trial court had refused to remove for cause. After a state Department

of Transportation employee was called, Holden asked for another peremptory challenge so he could remove her from the jury. The trial court denied the request.

Because the field-sobriety tests videotape was missing at the time of trial, the defense attorney asked that the trial court dismiss the case, grant a mistrial, or give an adverse-inference instruction. The trial court denied the request. The trial court did not rule on the defense request to bar showing the tape if found.

The trial court had jurisdiction under Art. VI, § 1, N.D. Const., and N.D.C.C. § 40–18–15.1. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 29–28–06(1), (2). The appeal was timely under Rule 4(b), N.D.R.App.P.

## II

■ The Sixth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, guarantees an accused the right to a trial by an impartial jury. *State v. McLain*, 301 N.W.2d 616, 620 (N.D.1981); *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594 (1975).

■ A defendant must exhaust all peremptory challenges before objecting to the denial of a challenge for cause. *State v. Ternes*, 259 N.W.2d 296, 297 (N.D.1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978).

■ Whether all law enforcement officers should be removed for cause from DUI or other criminal-case juries is a question of law and is fully reviewable. *See Ternes*. The trial court decides whether to remove a specific prospective juror for cause, and we review the decision under an abuse of discretion standard. *State v. Gross*, 351 N.W.2d 428, 433 (N.D.1984).

N.D.C.C. § 29–17–33 defines and classifies challenges for cause as general disqualification from all cases or disqualification from serving on the particular case. N.D.C.C. § 29–17–34 provides the general causes are lack of a statutory qualification to be a competent juror, and lack of physical or mental capacity to perform the duties. N.D.C.C.

§ 27–09.1–08(2) disqualifies prospective jurors based on citizenship, residency, age, communicative, physical or mental disability, or loss of the right to vote. None of these provisions create a general disqualification for law enforcement officers.

■ Holden argues the Highway Patrol officer should have been removed from the jury because of implied bias. "Implied bias may be based upon any or all of the enumerated causes found in § 29–17–36, NDCC, and no others." *Ternes* at 297. As this Court said in *Ternes* at 298:

> "The appellant argues that a bias or prejudice on the part of a current badge-carrying police officer should be inferred. This Court is not at liberty to expand the statutory list of causes which imply bias. The answers given by the prospective juror did not convince the trial court that [the prospective juror] could not try the issue impartially."

■ Holden argues for the first time on appeal that bias of the officer should have been implied because of N.D.C.C. § 29–17–36(2), "[t]he relationship of ... master and servant...." Although the officer in question was not an employee of the agency bringing the charges, the defendant contends, "[t]he City of Bismarck and the State of North Dakota should, for most purposes, be considered to be one and the same." To the extent this is a new issue raised for the first time on appeal, it is not entitled to consideration. *In Interest of B.D.*, 510 N.W.2d 629, 632 (N.D.1994). In addition, we note the issue was implicitly resolved in *Ternes*. Carried to its logical conclusion, the defendant's argument would exclude all government employees from jury service in criminal cases. Government employment, by itself, does not disqualify a person from serving as a juror, but a government employee, like others, may be challenged for actual bias. *Frazier v. United States*, 335 U.S. 497, 510–11, 69 S.Ct. 201, 208, 93 L.Ed. 187, 197–98 (1948). There is no disqualifying master and servant relationship between the juror and the City of Bismarck. There was no implied bias.

The officer said he would be fair and impartial. We must give great weight to a juror's statement at voir dire that the juror will give the defendant a fair and impartial trial. *McLain* at 622. Holden did not establish actual bias. The trial court did not abuse its discretion by denying the challenge for cause.

■ Citing no authority, Holden argues he should have been given an additional peremptory challenge to be used against another potential juror, a Department of Transportation employee. The issue is a reprise of the denial of the challenge of the Highway Patrol officer. The defendant established no basis to challenge the D.O.T. employee for cause. The trial court did not abuse its discretion in refusing another peremptory challenge.

## III

■ Because the videotape of his field sobriety tests was unavailable for use at trial, Holden argues the court should have dismissed the case, granted a mistrial, or given an adverse-inference instruction. He contends this is the proper remedy when the police or the prosecutor lose potentially exculpatory evidence.

## A

The trial court had ordered "[p]retrial discovery shall be completed and all pretrial motions shall be filed with the Court sufficiently in advance of the pretrial conference" which was held on April 28, 1993.

October 11, 1993, immediately before the trial, the defense attorney asked the prosecutor to leave chambers so he could talk to the judge. The defense attorney told the judge that on the previous day when he had gone to view the videotape for the first time, he had discovered his client was not shown on the tape law enforcement officers showed him. Sometime during voir dire, the defense attorney passed a note to the prosecutor, alerting him for the first time to a problem with the videotape.

The prosecutor told the court:

"There is a problem. I talked to Lt. Schaffer, and they can't find the tape. They're looking for it. The way they are looking for it is just to pull them out and review them. . . . The only explanation we can offer is each tape gets a number . . . and they may have misnumbered . . . and the tape may be somewhere in their inventory under a different number because someone used the wrong number. And that's the only way they have of finding it is looking at each one."

He also said neither he nor the defense attorney had seen the tape. The defense attorney then moved for dismissal, or, alternatively, for a mistrial, to "exclude the tape if they ever do find it," or for an adverse-inference instruction. The trial court denied the motions, except it did not rule on the motion to exclude the tape if found.

During trial, the officer who videotaped the defendant's performance of field sobriety tests testified "we don't have that videotape here today," the Bismarck Police Department "had control, possession of the videotape," and "it's the position of the Bismarck Police Department that they have lost it or misplaced it."

After the parties rested, the defense attorney alleged the loss of evidence is "quite regular" and renewed his request for an adverse-inference instruction. The prosecutor acknowledged evidence is frequently lost by stating: "I wish they weren't lost all the time, too, but errors are going to be made." The prosecutor had informed the court they were trying to find the correct tape by looking through all the videotapes. Because of the late notice there was insufficient time.

The trial court refused to give the requested instruction. The defense attorney and the prosecutor addressed the lost videotape in their final arguments to the jury.

## B

In *State v. Steffes*, 500 N.W.2d 608 (N.D. 1993), a Highway Patrol officer taped Steffes's performance of an alphabet recitation exercise and a counting exercise on the patrol car's audio tape recorder. On the day before his trial for driving while under the influence of alcohol, Steffes learned that the audio tape had been obliterated. Steffes requested the following instruction, which is

the same as the adverse-inference instruction Holden requested in this case:

## "FAILURE TO PRODUCE EVIDENCE

"The state has the duty to preserve all relevant evidence. If the state has failed to offer evidence under their control and the evidence was not equally available to the defendant, you may infer that the evidence would be unfavorable to the state.

"NDJI–CIVIL 1625 (modified)"

*Steffes* at 610. While drawn from a civil pattern jury instruction, the requested instruction "did not include that part of the instruction which permitted the unfavorable inference if 'no reasonable explanation for that failure is given.'" *Steffes* at 610 n. 2. The trial court refused to give the requested instruction. This Court held that the trial court did not err in failing to give the requested instruction and upheld Steffes's conviction because there was no evidence the audio tape was erased in bad faith.

In *Steffes* at 612, this Court recognized a prosecutor's duty to preserve evidence:

"The prosecutor has a duty to preserve evidence that is material and favorable to the defendant. Rule 16(a)(1), N.D.R.Crim.P. A prosecutor's failure to do so may be held to violate the defendant's constitutional right to due process and a fair trial. Rule 16(d)(2), N.D.R.Crim.P."

We emphasized "[i]t is the State's duty to zealously protect evidence in its possession." *Steffes* at 614 n. 5.

Relying on *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988), this Court said "that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *Steffes* at 613. We also recognized:

"Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense."

*Steffes.* We further recognized, however, less stringent rules might be appropriate if the destruction of evidence is commonplace: "The haphazard handling and destruction of evidence, which actions are potentially prejudicial to the accused, may warrant different rules if destruction of evidence is commonplace." *Steffes* at 614 n. 6.

This case involves the Bismarck Police Department's loss, destruction or misplacing of a videotape of Holden performing field sobriety tests. *Steffes* involved the North Dakota Highway Patrol's destruction of an audio tape of Steffes's performance of an alphabet recitation exercise and a counting exercise. *City of Bismarck v. Bauer,* 409 N.W.2d 90 (N.D.1987), involved the Bismarck Police Department's destruction of a videotape of the defendant's performance of physical tests and a breath test. Defense counsel asserted in the trial court the loss or destruction of evidence was "quite regular." The prosecuting attorney in this case said, "I wish they weren't lost all the time, too, but errors are going to be made," acknowledging the loss of evidence is common.

If there is a "systemic disregard," *Madison v. North Dakota Dept. of Transp.,* 503 N.W.2d 243, 246 (N.D.1993), of the "State's duty to zealously protect evidence in its possession," *Steffes* at 614 n. 5, so that "haphazard handling and destruction of evidence … is commonplace," *Steffes,* the adoption of prophylactic measures, such as an adverse-inference instruction, may be justified in cases of a failure to preserve evidence in order to protect defendants from the loss or destruction of potentially helpful evidence and to induce the state to adopt better safeguards to protect evidence in its possession.

Were we to adopt an adverse-inference instruction as a prophylactic measure in cases like this, however, the instruction requested by Holden would not be an appropriate instruction. The requested instruction would allow an adverse inference to be drawn from every failure of the state to offer evidence in its control. Such an instruction might compel prosecutors to offer unduly cumulative or marginally relevant evidence

just to avoid that instruction. This could be avoided by an adverse-inference instruction specifically limited to lost or destroyed evidence, and providing an adverse inference could be drawn from a failure to offer evidence only if "no reasonable explanation for that failure is given." Because the instruction requested by Holden was not an appropriate method of dealing with unintentionally lost or destroyed evidence, the trial court did not abuse its discretion in refusing to give it.

### C

 Holden's failure to comply with the trial court's discovery order may well have contributed to the unavailability of the videotape at trial. The prosecution did not have the time to search for the correct videotape, as it would have had, if the discovery order had been followed. The defendant's alternative motion to exclude the tape if found demonstrates his doubt as to its exculpatory nature.

A defendant's "delay in asking for sanctions against the government," for not producing evidence, *United States v. $94,-000.00 In United States Currency*, 2 F.3d 778, 787 (7th Cir.1993), procrastination in seeking discovery of evidence until after a discovery deadline had expired, *United States v. Pretel*, 939 F.2d 233, 239–40 (5th Cir.1991), or failure "in a timely fashion to request an independent analysis of the evidence while it was available," *Hamele v. Manson*, 577 F.Supp. 439, 444 (D.Conn.1983), are factors a court may consider in dealing with unintentional loss or destruction of evidence while in police control. *See also United States v. Shelton*, 588 F.2d 1242, 1250 (9th Cir.1978) (Government's failure to provide evidence did not require a new trial where the government made a good-faith effort to locate the material and the defense was guilty of a lack of diligence in attempting to obtain such evidence independently); *State v. Eugene*, 340 N.W.2d 18 (N.D.1983) (State's loss of physical evidence did not require acquittal or new trial where defense did not attempt to gain access to the evidence until trial and there was no indication in the record that the police knew or had reason to

know the items might be material and exculpatory).

In light of the defense counsel's untimeliness in seeking to view the videotape, and the speculative nature of its contents, which neither the prosecutor nor defense counsel had seen, we also conclude the trial court did not abuse its discretion in denying the adverse-inference instruction, or the more drastic measures of mistrial or dismissal.

### IV

The judgment of conviction is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.