**STATE of North Dakota, Plaintiff and Appellee,**

v.

**William Joseph BARNETT, Defendant and Appellant.**

Cr. No. 950144.

Supreme Court of North Dakota.

Feb. 13, 1996.

Bradley A. Cruff (argued), Assistant State's Attorney, Valley City, for plaintiff and appellee.

William A. Mackenzie (argued), Jamestown, for defendant and appellant.

LEVINE, Justice.

In this appeal from a judgment of conviction for delivery of a controlled substance, William Joseph Barnett challenges the trial court's rulings on two suppression motions, its refusal to give a requested jury instruction on lost evidence, and the prosecutor's closing argument. We affirm.

Hoping to improve her position after being arrested for DUI, Naomi Martinez told law enforcement authorities that she could make a drug buy for them in Valley City. On January 19, 1994, Martinez, who was wired with a transmitter, went to Barnett's home to buy marijuana. Barnett did not have any marijuana, but had Martinez take him to another person's house. Martinez gave Barnett $60 in marked bills, and Barnett went into the house and returned with a quarter ounce of marijuana for Martinez.

Martinez gave the marijuana to the authorities at approximately 9:30 p.m. on January 19, 1994. Officers secured a search warrant for the house where the buy was made, seized some controlled substances and some money, including two marked $20 bills, and made an arrest. At approximately 1:30 a.m. on January 20, 1994, three officers arrested Barnett at his home without securing an arrest warrant. While he was being booked, a marked $10 bill was seized from Barnett.

After a jury trial, Barnett was convicted of delivery of a controlled substance and he appealed.

I

Prior to trial, Barnett moved to suppress all evidence on the ground that his warrantless arrest in his home was illegal. The trial court determined that the officers had probable cause to arrest Barnett, but

that there were no exigent circumstances justifying his warrantless arrest in his home. The court ordered the suppression of all evidence obtained after the arrest.[1] Barnett contends "that the more appropriate remedy would have been an outright dismissal or the suppression of all evidence gathered from the moment confidential informant [Martinez] made contact with Barnett." We disagree.

■ The Fourth Amendment to the United States Constitution prohibits police from making a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).[2] "Absent exigent circumstances," the threshold to a suspect's home "may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653. A defendant must stand trial even if his or her arrest was illegal. *New York v. Harris*, 495 U.S. 14, 18, 110 S.Ct. 1640, 1643, 109 L.Ed.2d 13, 20 (1990); *Payton v. New York, supra*, 445 U.S. at 592 n. 34, 100 S.Ct. at 1383, n. 34, 63 L.Ed.2d at 654 n. 34.

■ The remedy for a suspect's warrantless in-home arrest is application of the exclusionary rule. *Payton, supra*, 445 U.S. at 591–92, 100 S.Ct. at 1383, 63 L.Ed.2d at 654. "[I]n this context, ... '[t]he penalties visited upon the Government ... because its officers have violated the law must bear some relation to the purposes which the law is to serve.'" *New York v. Harris, supra*, 495 U.S. at 17, 110 S.Ct. at 1642–43, 109 L.Ed.2d at 20, quoting *United States v. Ceccolini*, 435 U.S. 268, 279, 98 S.Ct. 1054, 1063–64, 55 L.Ed.2d 268, 279 (1978). "The warrant requirement for an arrest in the home is imposed to protect the home." *New York v. Harris, supra*, 495 U.S. at 20, 110 S.Ct. at 1644, 109 L.Ed.2d at 22. Under *Payton, supra*, "a warrantless entry will lead to the suppression of any evidence found, or statements taken, inside the home." *New York v. Harris, supra*, 495 U.S. at 20, 110 S.Ct. at 1644, 109 L.Ed.2d at 22. Other evidence need not be suppressed if suppression would

not serve the purpose of the warrant requirement. *Id.*

We conclude the trial court properly refused to dismiss the case and properly suppressed only evidence obtained after Barnett's arrest. Suppression of evidence acquired before the arrest would not serve the warrant requirement's purpose of protecting the home. That other evidence "was not the product of [Barnett] being in unlawful custody" or "the fruit of having been arrested in the home rather than someplace else" or "an exploitation of the illegal entry into [Barnett's] home." *New York v. Harris, supra*, 495 U.S. at 19, 110 S.Ct. at 1644, 109 L.Ed.2d at 21.

## II

■ After learning that the tape recording of Martinez's conversations with Barnett had been lost, Barnett filed a motion to suppress "all written, oral or physical evidence obtained as a result of the 'body bug' or 'wire' that was on the informant's body." The trial court noted there was no indication of bad faith and denied the motion, but reserved the right to issue an instruction on the matter. Noting that several officers testified about "what they recall hearing while the bug was operational," and that "[t]he actual tape would have been the best evidence of what conversations occurred," Barnett argues that "without the surveillance tape, he was precluded from putting forth a possible entrapment defense."

■ There was no evidence of bad faith by the officers—they just could not find the tape. Because there was no bad faith, there was no federal due process violation under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). *State v. Steffes*, 500 N.W.2d 608 (N.D.1993).

There may be other grounds for adopting some kind of prophylactic response to lost evidence. Justice Stevens, for example, concurring in the judgment in *Arizona v. Youngblood, supra*, 488 U.S. at 61, 109 S.Ct.

---

1. The evidence suppressed was a marked $10 bill and a statement.

2. In *State v. Nagel*, 308 N.W.2d 539 (N.D.1981), this court declared N.D.C.C. § 29-06-14 unconstitutional because it authorized such entries without exigent circumstances.

at 339, 102 L.Ed.2d at 291, said that "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." The Stevens rationale has generated a line of cases based upon state constitutional grounds that impose a higher due process standard than the *Arizona v. Youngblood* bad faith test. *See Steffes, supra,* at 611, n. 3. Barnett has not briefed the state constitutional issue.

 This court, however, has recognized that bad faith is not the only basis for ameliorating the impact of lost or destroyed evidence:

> "If there is a 'systemic disregard,' *Madison v. North Dakota Dept. of Transp.,* 503 N.W.2d 243, 246 (N.D.1993), of the 'State's duty to zealously protect evidence in its possession,' *Steffes* at 614 n. 5, so that 'haphazard handling and destruction of evidence ... is commonplace,' *Steffes,* the adoption of prophylactic measures, such as an adverse-inference instruction, may be justified in cases of a failure to preserve evidence in order to protect defendants from the loss or destruction of potentially helpful evidence and to induce the state to adopt better safeguards to protect evidence in its possession."

*Bismarck v. Holden,* 522 N.W.2d 471, 475 (N.D.1994).

Barnett did not request a copy of the tape recording until late November or early December, 1994, ten or eleven months after it was made. Barnett did not show bad faith on the part of the officers. Barnett has not shown that the tape was plainly exculpatory or that loss of the tape was so critical to his defense as to make a trial fundamentally unfair. He has not shown a systemic disregard of the State's duty to protect evidence in its possession. Under these circumstances, as in *Bismarck v. Holden, supra,* we are unable to conclude that the trial court abused its discretion in denying the relief Barnett sought.

## III

 Barnett contends that the trial court erred in failing to give the following jury instruction:

> "The State has a duty to preserve all relevant evidence. If the State has failed to offer evidence under its control and no reasonable explanation for that failure is given, and that evidence was not equally available to the Defendant, you, the Jury, may infer that the evidence would be unfavorable to the State."

Instead, the trial court instructed:

> "If you find that the State has lost any evidence whose content or quality are in issue, you may infer that the true fact is against the State's interest."

The instruction requested by Barnett is not "specifically limited to lost or destroyed evidence." *Bismarck v. Holden, supra,* 522 N.W.2d at 476. It "would allow an adverse inference to be drawn from every failure of the state to offer evidence in its control," and it "might compel prosecutors to offer unduly cumulative or marginally relevant evidence just to avoid that instruction." *Bismarck v. Holden, supra,* 522 N.W.2d at 475–76. The requested instruction was, therefore, "not an appropriate method of dealing with unintentionally lost or destroyed evidence" and "the trial court did not abuse its discretion in refusing to give it." *Bismarck v. Holden, supra,* 522 N.W.2d at 476. The instruction given by the trial court, on the other hand, is specifically limited to lost evidence, without giving the State an opportunity to explain its loss or its relative unimportance. An instruction like the one given here was also given by the trial judge in *Arizona v. Youngblood, supra.* Justice Stevens, concurring in the judgment in that case, observed that, as a result of that instruction, "the uncertainty as to what the evidence might have proved was turned to the defendant's advantage." *Arizona v. Youngblood, supra,* 488 U.S. at 60, 109 S.Ct. at 338, 102 L.Ed.2d at 290. The instruction given was more favorable to Barnett than the one he requested because it did not allow the State to explain the loss.

## IV

 In closing argument to the jury, the prosecutor said:

"Now the defense undoubtedly is going to argue that the defendant should not be found guilty because of things he states as problems with the State's case because as you know, the only evidence we saw yesterday were from the witnesses that I called and the evidence that we presented."

Although he did not object at trial, Barnett now contends that this statement was a subtle comment on his failure to testify. By failing to object at trial, Barnett failed to preserve this issue for review on appeal, unless it constitutes obvious error. *State v. Ash*, 526 N.W.2d 473 (N.D.1995). "We exercise cautiously our power to notice obvious error and only in 'exceptional situations where the defendant has suffered serious injustice.'" *State v. Zimmerman*, 524 N.W.2d 111, 116 (N.D.1994), quoting *State v. Smuda*, 419 N.W.2d 166, 168 (N.D.1988). This is not such a case.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

I understand the majority opinion to hold only that Barnett cannot complain about an instruction given by the trial court which is more favorable than the one he requested. I agree. I do not understand the majority opinion to approve the instruction given as an appropriate instruction for future cases. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *City of Bismarck v. Holden*, 522 N.W.2d 471 (N.D. 1994); *State v. Steffes*, 500 N.W.2d 608 (N.D. 1993).

SANDSTROM, NEUMANN and MESCHKE, JJ., concur.