2008 ND 32

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Paul A. FISCHER, Defendant and Appellant.**

No. 20060140.

Supreme Court of North Dakota.

Feb. 21, 2008.

Rehearing Denied April 17, 2008.

Brian David Grosinger, Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

Paul A. Fischer, Jamestown, N.D., pro se.

VANDE WALLE, Chief Justice.

[¶ 1] Paul A. Fischer appealed from a criminal judgment entered on a jury verdict finding him guilty of manufacturing a controlled substance, possessing a controlled substance with intent to deliver, and possessing methamphetamine-related drug paraphernalia. We conclude the district court did not err in denying Fischer's suppression motion. We further conclude Fischer failed to establish his court-appointed attorneys provided ineffective assistance of counsel, his due process rights were infringed by trial delay, and his jury was not impartial. We affirm.

I

[¶ 2] On November 30, 2004, Fischer was arrested after law enforcement officers discovered him manufacturing methamphetamine in a pole barn in rural Morton County. At the time, Fischer had been released on bond for an October 9, 2004, arrest which resulted in charges of manufacturing a controlled substance and possessing a controlled substance and drug paraphernalia. Fischer was again charged with three drug-related felonies and criminal trespassing. He was held on $50,000 cash bond and the same attorney who was appointed to represent him on the October 2004 charges was appointed to represent him on the November 2004 charges.

[¶ 3] Shortly after counsel was appointed, Fischer made motions to discharge his attorney and to allow Fischer to represent himself in the two criminal proceedings. He also moved to reduce his bail so he could access legal materials for his defense. Fischer's bond was reduced to $20,000 cash or surety bond, but he was unable to post bail. On January 7, 2005, the district court granted court-appointed counsel's motion to withdraw as Fischer's attorney. A second attorney was appointed to represent Fischer on January 12, 2005, and she requested discovery. Fischer's preliminary hearing was rescheduled for February 14, 2005, and the second attorney represented Fischer during that proceeding.

[¶ 4] On March 10, 2005, Fischer moved to have the second attorney discharged. The court granted the second attorney's motion to withdraw on March 14, 2005. On March 31, 2005, the court appointed a third attorney to represent Fischer, and that attorney requested discovery. In May 2005, the court set the trial date for July 21–22, 2005. Fischer's third attorney subsequently moved to suppress evidence and moved for approval of funds to take depositions. A deposition hearing was scheduled for July 14, 2005, and the hearing on the motion to suppress, originally scheduled for July 8, 2005, was rescheduled for September 2, 2005. Fischer's scheduled trial was also continued and rescheduled for November 3–4, 2005. On August 31, 2005, Fischer's third attorney requested that the suppression

hearing be rescheduled because "Mr. Fischer does not want me to represent him and he says he is going to file an ineffective assistance of counsel claim. There is no line of communication. I will be filing a motion to withdraw." The district court denied the motion, and at the September 2, 2005, suppression hearing, the court allowed Fischer to represent himself, but required his third court-appointed attorney to provide assistance as standby counsel. After Fischer told the court he was "[a]bsolutely not" prepared to go forward with the hearing, the court rescheduled the suppression hearing for October 18, 2005.

[¶ 5] At the beginning of the suppression hearing, Fischer once again asked for a continuance, but the court denied the request. The third court-appointed attorney assisted Fischer during the hearing. The district court denied the suppression motion on October 20, 2005.

[¶ 6] On November 2, 2005, Fischer moved for a continuance of his November 3, 2005, jury trial on the charges stemming from the October 9, 2004, incident, so he could have more time to prepare. The court denied the motion and Fischer represented himself with the assistance of his third court-appointed attorney. The jury acquitted Fischer of those charges. The district court rescheduled Fischer's jury trial on the charges stemming from the November 30, 2004, incident for February 22, 2006. The Department of Corrections and Rehabilitation granted a variance to allow Fischer to be housed in the Morton County Correctional Center for more than one year.

[¶ 7] On November 21, 2005, Fischer moved for dismissal of all remaining charges against him "for the unreasonable delay in bringing defendant to trial." The district court denied Fischer's motion on December 6, 2005, concluding although it was "concerned with the length of his confinement awaiting trial," "the delay in the trial of this case has [not] been excessive." Fischer attempted to appeal the court's order, but this Court dismissed the appeal on February 2, 2006.

[¶ 8] Fischer represented himself with the assistance of his third court-appointed attorney at the February 22–23, 2006, jury trial. The jury returned a verdict of guilty on all charges except criminal trespass, which was dismissed before the trial began. Fischer was sentenced to 20 years in prison, with 11 years suspended for five years, on the manufacturing charge. He was sentenced concurrently to 20 years in prison, with 11 years suspended for five years, for possession with intent to deliver. He was sentenced concurrently to five years in prison for possession of drug paraphernalia. In *State v. Fischer*, 2007 ND 22, ¶ 1, 727 N.W.2d 750, a majority of this Court concluded the district court abused its discretion in denying Fischer's motion for an extension of time to file his notice of appeal.

II

[¶ 9] Fischer argues the district court erred in denying his motion to suppress.

[¶ 10] In *State v. Goebel*, 2007 ND 4, ¶ 11, 725 N.W.2d 578, we summarized the standard of review for a district court's decision on a motion to suppress evidence:

When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381. We recognize that the district court is in a superior position to assess the credibility of witnesses and weigh the evidence. *State v. Woinarowicz*, 2006 ND 179, ¶ 20, 720 N.W.2d 635 (citations omitted). Generally, a district court's decision to deny a motion to sup-

press will not be reversed if there is sufficient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence. *Id.* Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Graf,* at ¶ 7.

[¶ 11] The record reflects that Fischer and his wife had been renting a home on a farmstead owned by the estate of Mabel Nelson. Randy Nelson served as the "acting landlord" of the premises. Fischer and his wife also were allowed access to a portion of a pole barn on the property. However, Fischer and his wife had been evicted from the property and were to have their belongings off of the premises by November 15, 2004. On the morning of November 30, 2004, Ricky Nelson, an heir of the estate, contacted a law enforcement officer and requested that he go to the farmstead and inspect a bucket he had found in the pole barn. Ricky Nelson told the officer he had tools in the barn and he and his family were allowed access to the building. Law enforcement officers went to the farmstead, went into the pole barn, and discovered Fischer in the process of manufacturing methamphetamine. The officers placed Fischer under arrest and gave him *Miranda* warnings. After the warnings were given, Fischer made incriminating statements.

[¶ 12] Fischer argues his Fourth Amendment rights were violated because the officers did not have a search warrant and because Ricky Nelson was not an actual owner of the property authorized to consent to the search. Even assuming Fischer had a reasonable expectation of privacy in property from which he had been evicted, *see State v. Oien,* 2006 ND 138, ¶ 13, 717 N.W.2d 593 (defendant had no reasonable expectation of privacy in his

girlfriend's apartment after becoming aware landlord forbid him from being on Housing Authority property), consent is a clearly delineated exception to the warrant requirement. *State v. Albaugh,* 2007 ND 86, ¶ 21, 732 N.W.2d 712. "Law enforcement officials do not have to obtain consent from the owner of the property." *State v. Zimmerman,* 529 N.W.2d 171, 175 (N.D.1995). Rather, "[u]nder the Fourth Amendment, ... valid consent to search may be given by parties with actual or apparent common authority, when viewed from the officer's perspective." *Id.*

> "[The] determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid."

*Id.* (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 188–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).

[¶ 13] At the suppression hearing, Morton County Deputy Sheriff Rob Fontenot testified:

> Q  Okay. But just again, for the record, you did not verify Ricky Nelson as a property owner, just simply by what he told you?

> A  I didn't personally verify it. Deputy Bitz spoke to some other members of the Nelson family that advised Deputy Bitz that Ricky Nelson had permission to allow us to go in and search.

[¶ 14] We conclude the officers could reasonably conclude Ricky Nelson had apparent authority to consent to the search, and therefore, the officers' warrantless entry into the pole barn did not violate Fischer's Fourth Amendment rights.

## III

[¶ 15] Fischer raises a trio of issues concerning the adequacy of his legal representation.

### A

[¶ 16] Fischer argues he received ineffective assistance of counsel from his three court-appointed attorneys.

[¶ 17] In *State v. Noorlun*, 2005 ND 189, ¶ 30, 705 N.W.2d 819, we outlined the standard for assessing an ineffective assistance of counsel claim on direct appeal:

A defendant claiming ineffective assistance of counsel must establish counsel's performance was deficient and counsel's deficient performance prejudiced the defendant. *State v. Palmer*, 2002 ND 5, ¶ 11, 638 N.W.2d 18. In *Palmer*, at ¶ 11, we said "[t]o demonstrate prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, and the defendant must specify how and where trial counsel was incompetent and the probable different result." A claim of ineffective assistance of counsel ordinarily should be raised in a post-conviction proceeding so the parties can fully develop a record on the issue of counsel's performance and its impact on the defendant's case. *Id.* at ¶ 12. When ineffective assistance of counsel is raised on direct appeal, we will review the record to determine if counsel was plainly defective. *Id.* If we cannot conclude that assistance of counsel was plainly defective and if no other grounds for reversal exist, we will affirm the judgment without prejudice to the defendant pursuing a claim for ineffective assistance of counsel at a post-conviction proceeding where an adequate record can be developed. *State v. Strutz*, 2000 ND 22, ¶ 26, 606 N.W.2d 886.

[¶ 18] On this record, we are unable to conclude that the assistance of Fischer's court-appointed attorneys was ineffective. Fischer complains that his first attorney had an "overburdened schedule" and failed to sufficiently communicate with him. Fischer complains that his second attorney erroneously advised him to plead guilty to the October 2004 charges on which the jury ultimately returned verdicts of not guilty. Fischer's major complaint about his third attorney is essentially that the attorney did not do enough to help him. This assumes an ineffective assistance claim can be asserted against standby counsel. *Compare State v. Hart*, 1997 ND 188, ¶ 25, 569 N.W.2d 451 (defendant "has articulated no standard for ineffective assistance of standby counsel") and *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) ("the inadequacy of standby counsel's performance, without the defendant's relinquishment of his [right to self-representation], cannot give rise to an ineffective assistance of counsel claim") *with People v. Bloom*, 48 Cal.3d 1194, 259 Cal.Rptr. 669, 774 P.2d 698, 718 (1989) ("To prevail on a claim that counsel acting in an advisory or other limited capacity has rendered ineffective assistance, a self-represented defendant must show that counsel failed to perform competently *within the limited scope of the duties assigned to or assumed by counsel* ").

[¶ 19] "The effectiveness of counsel's representation is measured objectively considering the prevailing professional norms." *State v. Loughead*, 2007 ND 16, ¶ 25, 726 N.W.2d 859. Fischer has pointed to nothing but his subjective dissatisfaction with his court-appointed attorneys. Fischer's representations and assertions on appeal are insufficient to establish a claim of ineffective assistance. *See, e.g., State v. Schweitzer*, 2007 ND 122, ¶ 25, 735 N.W.2d 873; *State v. Bates*, 2007 ND 15, ¶ 19, 726

N.W.2d 595. Fischer's allegations do not establish that his attorneys' assistance was plainly defective or that Fischer was prejudiced by their performance.

### B

█ [¶ 20] Fischer argues he was forced to choose between self-representation and "poor counsel," and consequently, his choice to act as his own attorney was involuntary. Fischer relies upon a line of cases represented by *United States v. Silkwood*, 893 F.2d 245, 248 (10th Cir. 1989), in which the court said for a waiver of the right to counsel to be voluntary, "the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing *pro se*."

█ [¶ 21] "Before accepting a waiver of the right to counsel, we have stated the district court should engage in a two-part, fact-specific inquiry to determine the waiver of the right to counsel is voluntary, and to determine the waiver of counsel is made knowingly and intelligently." *State v. Holbach*, 2007 ND 114, ¶ 9, 735 N.W.2d 862. The record need not show an unequivocal statement indicating the defendant's desire to represent himself. *Id.* at ¶ 10. Rather, the "defendant's conduct may rise to the 'functional equivalent' of a voluntary waiver." *Id.* "Although we prefer the waiver of the right to counsel be expressed on the record, where there is a pattern of obstructing the legal process that waiver will seldom be acknowledged by the defendant." *State v. Dvorak*, 2000 ND 6, ¶ 15, 604 N.W.2d 445. "A knowing and intelligent waiver requires a defendant be aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows what he is doing and his choice is made with eyes open." *Id.* at ¶ 16.

[¶ 22] Fischer clearly demonstrated his intention to represent himself from the outset of these proceedings. On December 8, 2004, approximately one week after his arrest, Fischer made his first request that court-appointed counsel be discharged and that he be allowed to represent himself. After the attorney moved to withdraw as counsel, Fischer requested again on January 4, 2005, that the attorney be taken off the case and that Fischer be given access to "legal tools and materials to ensure a fair defence." The court appointed the second attorney on January 12, 2005, and Fischer moved on March 10, 2005, to have her discharged from the case. The third attorney was appointed on March 31, 2005, and on August 31, 2005, the attorney informed the court that Fischer no longer wanted him to serve as his attorney and was planning on filing an ineffective assistance of counsel claim against him. At the September 2, 2005, hearing during which the district court allowed Fischer to represent himself with the assistance of his third appointed counsel, the following discussion took place:

> THE COURT: ... Apparently you're the third attorney that he's made a motion against, and I've denied it because Mr. Fischer, you're not entitled to just one attorney after another. You're entitled to a court-appointed attorney. We appoint the attorneys. You accept them. If you want your own attorney, you can hire your own attorney, but we're not going to constantly appoint attorneys for you. Mr. Glass is a perfectly competent attorney, and he will be able to do this job.

> MR. GLASS: In addition, Your Honor, he requested to represent himself pro se.

> THE COURT: I understand that.

MR. GLASS: I would propose if he wanted to go forward representing himself, I would assist.

THE COURT: Is that what you want to do, you want to represent yourself, Mr. Fischer?

MR. GLASS: And in all fairness to him, he would need time to prepare for this hearing here today.

THE COURT: Well, let's find out about that. Mr. Fischer, tell me about that. Do you want to represent yourself or you want to go hire an attorney or what?

THE DEFENDANT: Sir, I'm in no position to hire an attorney. However, I have motioned the Court also on the other two attorneys, and I'm prepared to motion the Court on Mr. Glass. I believe he is perfectly competent, Your Honor, but we have—I don't see a case. I've been asking for the file. I've been asking to be kept abreast. I don't see a case. I mean, I met with him two days ago, and he couldn't produce one, and I don't see one in front of me.

THE COURT: What do you mean, "a case"?

THE DEFENDANT: Authority, case law, something—I believe my civil rights were violated in the arrest.

. . . .

THE COURT: Sure. I understand what it is you believe, the problem is what the evidence shows in the matter. You're looking at a class A felony. That's 20 years in prison. That's a big deal. You really need to have an attorney, and I don't know—you actually feel competent to represent yourself in this matter?

THE DEFENDANT: No, I don't, and I'm not opposed to having Mr. Glass, but I don't feel—I feel like I've been held incommunicado.

THE COURT: Well, the answer to that is, Mr. Fischer, all the attorneys who have appointed cases have big, big loads of cases. You are not his only client. He cannot devote 24 hours a day to your case. He cannot be available at your beckon [sic] call.

THE DEFENDANT: I understand that, Your Honor.

THE COURT: And he's perfectly competent. He knows exactly what he's doing. He's done these things before. He knows how to handle them. And my thought is this, that it's not right for you to represent yourself. You need to have an attorney represent you. We're not going to appoint another attorney. Mr. Glass is going to be your attorney, period. That's the end of it. So unless you want to go by this on yourself and try to figure this whole process out, which in my opinion would be legal suicide, you need to rely on the advice of your attorney.

. . . .

THE COURT: All right. You can sit there and back him up, and Mr. Fischer, good luck to you. This is a difficult process, but we're not going to complain about the results because you have a perfectly competent attorney handling this for you. So the results are strictly in your own hands because you're now in charge of your case, and Mr. Glass will advise you, but you get to be your own attorney. Do you understand that?

THE DEFENDANT: I understand.

█ Fischer's "behavior is indicative of using pretrial motion practice and requesting different lawyers to obstruct the legal process." *Holbach*, 2007 ND 114, ¶ 11, 735 N.W.2d 862. The record is replete with Fischer's competently written motions and other court filings. He succeeded in obtaining an acquittal on the October 2004 charges, and the record of

the trial proceedings on the November 2004 charges shows Fischer effectively cross-examined witnesses. He admitted that his third court-appointed attorney was competent, and was warned by the court that self-representation is "legal suicide." Fischer was not forced to choose between incompetent or unprepared counsel and self-representation. We conclude the record establishes Fischer's waiver of the right to counsel was voluntary and was made knowingly and intelligently.

### C

[¶ 24] Fischer argues his due process rights were violated by his inability to access legal materials while being held at the Morton County Correctional Center pending trial.

[¶ 25] In *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (footnote omitted), the United States Supreme Court held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *See also Jensen v. Satran*, 303 N.W.2d 568 (N.D.1981). Courts have held that a criminal defendant who knowingly and intelligently waives the right to counsel and elects self-representation, and who has been appointed standby counsel, is not constitutionally entitled to access to a law library. *See, e.g., State v. Taylor*, 63 Conn.App. 386, 776 A.2d 1154, 1170 (2001); *State v. Simon*, 297 N.W.2d 206, 209–10 (Iowa 1980); G. Blum, Annot., *Sufficiency of access to legal research facilities afforded defendant confined in state prison or local jail*, 98 A.L.R. 5th 445 § 4[a] (2002), and cases collected therein. The district court's appointment of standby counsel for Fischer satisfied the state's obligation to provide him with access to the courts. Although Fischer contends standby counsel's assistance was minimal, Fischer acknowledges the attorney "dropped off some legal materials at the jail three days prior to the suppression hearing." We conclude Fischer was not denied access to the courts during his pretrial detention.

### IV

[¶ 26] Fischer argues the $50,000 bail, later reduced to $20,000, was excessive.

[¶ 27] Pretrial bail issues are moot after conviction, unless the amount prejudiced the defendant in the preparation of his defense. *State v. Skarsgard*, 2007 ND 160, ¶ 18, 739 N.W.2d 786. Although Fischer contends his inability to post bail caused the loss of his painting and drywall business, he does not claim it prejudiced him in the preparation of his defense. We conclude the issue is moot and do not address it.

### V

[¶ 28] Fischer argues the approximately 15–month delay between his arrest and trial violated his right to a speedy trial under the Sixth Amendment to the United States Constitution and N.D.C.C. § 29–01–06(5).

[¶ 29] In *State v. Bergstrom*, 2004 ND 48, ¶ 15, 676 N.W.2d 83, we said:

In *State v. Erickson*, 241 N.W.2d 854, 859 (N.D.1976), this Court adopted the United States Supreme Court balancing test announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which is used to evaluate the validity of a speedy trial claim under the United States Constitution, and now, the North Dakota Constitution, and the North Dakota statute. N.D.C.C. § 29–01–06(5). The test requires balancing

four factors: length of the delay, reason for the delay, proper assertion of the right, and actual prejudice to the accused. *State v. Murchison*, 541 N.W.2d 435, 438 (N.D.1995) (citing *Barker*, 407 U.S. at 531–33[, 92 S.Ct. 2182]). In *Barker v. Wingo*, the Supreme Court of the United States held:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, 407 U.S. at 533, 92 S.Ct. 2182 (footnote omitted); *see also State v. Johnson*, 1999 ND 33, ¶ 21, 590 N.W.2d 192.

We review a district court's speedy trial decision de novo, with the district court's findings of fact reviewed under the clearly erroneous standard of review. *State v. Moran*, 2006 ND 62, ¶ 8, 711 N.W.2d 915.

[¶ 30] A delay of one year or more is " 'presumptively prejudicial,' " triggering an analysis of the other speedy trial factors. *Moran*, 2006 ND 62, ¶ 9, 711 N.W.2d 915 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). The 15–month delay in this case is presumptively prejudicial and weighs in the defendant's favor, but a presumptively prejudicial delay does not alone create a speedy-trial violation. *See Moran*, at ¶ 9 (three-year delay not speedy trial violation); *Bergstrom*, 2004 ND 48, ¶ 16, 676 N.W.2d 83 (delay of more than two years not speedy trial violation).

[¶ 31] The reason for the delay does not weigh in Fischer's favor. The primary reason for the delay in this case was Fischer's dissatisfaction with his attorneys, which resulted in multiple changes of court-appointed counsel. *See State v. Ochoa*, 2004 ND 43, ¶¶ 35–36, 675 N.W.2d 161. Each change required additional time for the attorneys to familiarize themselves with the case. When Fischer was finally granted his request to represent himself, he moved for continuances to allow for more time to prepare. His last requests for continuances were denied by the court. Fischer's actions caused most of the delay. There is no evidence the State purposefully delayed the trial.

[¶ 32] Fischer did not assert his speedy trial rights until mid-November 2005, almost one year after his arrest and three months before trial. A failure to timely assert the right to a speedy trial weighs against establishing a speedy trial violation has occurred. *See Moran*, 2006 ND 62, ¶ 16, 711 N.W.2d 915. Moreover, Fischer has not alleged that he suffered actual prejudice as a result of the delay. "To establish actual prejudice, a defendant must 'factually link her loss of liberty with any specific prejudice to her right to a fair trial.' " *City of Fargo v. Thompson*, 520 N.W.2d 578, 580 (N.D.1994) (quoting *City of Jamestown v. Erdelt*, 513 N.W.2d 82, 85 (N.D.1994)).

[¶ 33] Weighing the *Barker* factors, we conclude Fischer was not denied his right to a speedy trial.

VI

[¶ 34] Fischer argues he was not tried by an impartial jury representing a

fair cross section of the community. He contends the jury was not impartial because the jury questionnaires revealed that approximately one-third of the persons in the jury pool or their spouses were employed by state or county governments. He also contends some of the jurors should have been excused for cause.

[¶ 35] Persons accused of crimes have a federal and state constitutional right to be tried by an impartial jury. *State v. Newman*, 2007 ND 148, ¶ 6, 738 N.W.2d 887. In *State v. Thompson*, 552 N.W.2d 386, 388 (N.D.1996), this Court explained:

> A trial judge must excuse a juror if the judge "is of the opinion that grounds for challenge for cause are present." NDRCrimP 24(b)(2). A "for cause" challenge can be based on either actual or implied bias. NDCC 29–17–35; see *State v. McLain*, 301 N.W.2d 616, 622 (N.D.1981). "Actual bias" is the "existence of a state of mind on the part of the juror, with reference to the case or to either party, ... that he cannot try the issue impartially without prejudice to the substantial rights of the party challenging." NDCC 29–17–35(2). If the trial court does not believe a juror is actually biased, the court may still excuse the juror for an "implied bias" if one of the exclusive "causes" in NDCC 29–17–36 exists.

[¶ 36] Government employment does not constitute an implied bias under N.D.C.C. § 29–17–36, "but a government employee, like others, may be challenged for actual bias." *City of Bismarck v. Holden*, 522 N.W.2d 471, 473 (N.D.1994). When given the opportunity by the district court to challenge any of the jurors for cause, Fischer declined. Because the issue has not been preserved for review, *see State v. Entzi*, 2000 ND 148, ¶ 10, 615 N.W.2d 145, we review for obvious error affecting substantial rights. *State v. Gresz*, 2006 ND 135, ¶ 7, 717 N.W.2d 583. The record shows the district court asked the jurors Fischer now challenges whether they could remain fair and impartial, and those jurors replied that they could. "Great weight is given to a potential juror's claim that he or she will remain impartial." *State v. Nikle*, 2006 ND 25, ¶ 8, 708 N.W.2d 867. We conclude there is no obvious error affecting substantial rights because Fischer has failed to establish that his jury was not impartial.

## VII

[¶ 37] We have considered the other arguments raised by Fischer, and they do not affect our decision. We affirm the criminal judgment.

[¶ 38] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.