**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Philip Gene SIEVERS, Defendant and Appellant.**

**Criminal No. 950179.**

Supreme Court of North Dakota.

Feb. 13, 1996.

Glen R. Bruhschwein (argued), Assistant State's Attorney, Dickinson, for plaintiff and appellee.

Ronald A. Reichert, of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for defendant and appellant. Argued by William A. Herauf.

MESCHKE, Justice.

Philip Sievers appealed from an order denying his motion for a new trial after a jury found him guilty of two counts of gross sexual imposition. We hold that the trial court did not abuse its discretion in denying Sievers's motion for a new trial, and we affirm the order.

### I

Sievers was charged with two counts of gross sexual imposition under NDCC 12.1–20–03(1)(d)[1] for allegedly engaging in two sexual acts with his ten-year old stepdaughter, Nell (a pseudonym), between August 15 and September 30, 1992. Count one charged Sievers with "committing a sexual act by causing sexual contact between the defendant's penis and the mouth of a ten year old child." Count two charged Sievers with "committing a sexual act by causing sexual contact between the defendant's penis and the vulva of a ten year old child."

At trial, the State introduced a letter written by Nell in May 1993 that said, near when she began fifth grade, Sievers "stuck his penis into [her] vagina" and had her "lick & suck on his penis." Nell testified at trial that, although she did not know the exact date, Sievers committed the sexual acts described in her handwritten letter "around the beginning of 5th grade." Sievers testified and denied committing the sexual acts. He introduced evidence that he could not have committed the sexual acts because he was always under court-ordered adult supervision[2] while he was with Nell during the time that she said the acts occurred.

The jury found Sievers guilty of both counts. The trial court denied Sievers's motion for a new trial, and he appealed from the order denying his motion.

### II

A trial court's decision on a defendant's motion for a new trial is within the

---

1. NDCC 12.1–20–03(1)(d) says: "A person who engages in a sexual act with another ... is guilty of an offense if ... [t]he victim is less than fifteen years old...."

2. In 1991, Sievers pled guilty to one count of corruption or solicitation of a minor and one count of sexual assault for conduct with Nell. As a condition of probation, he was ordered not to have contact with Nell except as allowed in a pending juvenile action.

court's sound discretion, and it will not be reversed on appeal absent an abuse of discretion. *E.g.*, *State v. Daulton*, 518 N.W.2d 719 (N.D.1994). A court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner. *Id.* We review the court's denial of Sievers's motion for a new trial under this abuse-of-discretion standard.

### III

Sievers argues the trial court erred in not granting him a continuance before trial. The State's criminal information charged Sievers with committing the sexual acts "[i]n the later summer or fall of 1992." On July 15, 1994, the State filed an amended bill of particulars alleging the acts occurred between August 15 and September 30, 1992. Sievers moved for a continuance, arguing that the amended bill of particulars expanded the time period for the crimes and necessitated additional investigation. The court denied Sievers's motion for a continuance, ruling "the amended bill of particulars actually narrows the time period from the information." In denying Sievers's motion for a new trial, the court found "no undue prejudice in the failure to grant the motion for a continuance."

A motion for a continuance, like a motion for a new trial, rests in the discretion of the trial court, and its decision will not be set aside on appeal absent an abuse of discretion. *State v. Ash*, 526 N.W.2d 473 (N.D. 1995). The court did not abuse its discretion in denying Sievers's motion for a continuance and in denying his motion for a new trial on that basis.[3]

### IV

Sievers argues the State failed to comply with the trial court's order to instruct its witnesses not to refer to his "previous convictions, his probation, or any incidences of that ... previous conviction." Sievers argues that the State's oversight led to testimony by

Nell's mother and his wife, Janet Sievers, that he was not allowed to be alone with Nell because he was on "probation." The State acknowledges that it did not inform Janet about the court's order, but argues that Sievers invited any error because Janet's answer came in response to his cross-examination of her.

Before trial, this colloquy occurred:

*MR. REICHERT:* Your Honor, the motion I would like to make this morning is that the prosecution and its witnesses be instructed not to refer to Philip's previous convictions, his probation, or any incidences of that—of that previous conviction.

*THE COURT:* Okay. What is the State's position?

*MR. BRUHSCHWEIN:* The State doesn't intend to introduce any such evidence in its case in chief except if required for rehabilitation of witnesses, except if those matters are broached on cross examination.

*THE COURT:* Okay. The Court will grant the motion, and that means before any of this information can be brought out, it has to be brought to the attention of the Court prior to being brought out before the jury.

At trial, the State called Janet as a witness but did not question her then about Sievers's prior convictions or probation. During cross-examination of Janet, Sievers asked:

Q (Mr. Reichert) What were the—what was the reason that Philip wasn't left alone with the children?

A (Janet Sievers) I did—for the protection of my kids, plus also his probation said that he was never allowed to be alone with the girls.

Sievers did not object to Janet's response. The State later examined Janet on redirect without any further mention of Sievers's probation. On recross, Sievers inquired about Janet's "running battle" with social services concerning her children. On further redi-

---

**3.** Sievers moved for a continuance in response to the amended bill of particulars and not because of any discovery problems associated with the second letter written by Nell that he now claims is newly discovered evidence. Sievers claims "in 20/20 hindsight ... that if the continuance had been granted, the issue of newly discovered evi-

dence and maybe the *Brady* violations" (which we consider hereafter) would not have arisen. However, Sievers's motion for a continuance was not made on that basis, and we decline to attach his arguments on those issues to add justification for a continuance before trial.

rect, the State attempted to explain Janet's "running battle" with social services by testimony from her that social services had removed the children from her home in December 1990 because of allegations of "abuse" by Sievers.

Sievers then moved for a mistrial and, without specifically referring to Janet's earlier testimony about his "probation," argued that allegations of "sexual abuse" against him in 1990 were inadmissible. The trial court denied Sievers's motion but "cut off any further redirect into this area." The court also refused to give a curative instruction; however, the record does not include a proposed curative instruction, nor does the record suggest that any such instruction would have addressed Janet's reference to Sievers's "probation." In denying Sievers's motion for a new trial, the court ruled "[t]he only references during trial that could be considered violations [of its order] are by the defendant's wife, Janet Sievers, and this testimony is in response to defense counsel's leading questions ... [that] the Court does not find ... to be a basis for granting a new trial."

■ Although the State should have advised Janet about the order in limine, we agree with the trial court that the only violation of its order was Janet's testimony about Sievers's "probation" that Sievers developed. Sievers neither objected, nor moved to strike the reference to "probation" from the record. See NDREv 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection."). Under these circumstances, we conclude the court did not abuse its discretion in denying Sievers's motion for new trial based upon Janet's reference to Sievers's "probation."

V

Sievers contends he was entitled to a new trial for newly discovered evidence. After his trial on August 9–11, 1994, Sievers located a letter written by Nell that was in her medical records at St. Alexius Hospital. In that handwritten letter, Nell claimed both "my dad and foster brother" had sexual intercourse with her; however, she later told a therapist that the incident with her foster brother "never happened."

Sievers contends this "newly discovered" letter affects the central issue in the case, Nell's credibility, and is tangible written proof that she had falsely accused others of sexual abuse. Relying on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, Sievers also asserts that, although the letter was in Nell's medical records at St. Alexius, the State and its investigatory agencies should have been aware of it and failed to disclose it to him. The State responds that the letter is not "newly discovered" because Sievers was aware of the substance of it before trial. The State argues that the prosecution did not possess the letter and that neither the prosecutor, nor the State's investigatory agencies, knew about the letter until after the trial. We decide Sievers's newly-discovered-evidence challenge and his *Brady* claim on the same ground.

■ A defendant seeking a new trial for newly discovered evidence must show (1) the evidence was discovered after trial; (2) the failure to learn about it beforehand was not from defendant's lack of diligence; (3) the new evidence is material to the trial; and (4) the quality and weight of the new evidence would likely produce an acquittal. *State v. Thiel*, 515 N.W.2d 186 (N.D.1994). A defendant's failure to discover evidence from a lack of diligence also defeats a *Brady* claim that the prosecution withheld that evidence.

■ In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97. *See State v. Anderson*, 336 N.W.2d 123 (N.D.1983); *State v. Hilling*, 219 N.W.2d 164 (N.D.1974). In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court applied the *Brady* rule to the suppression of impeachment evidence

that might have affected the outcome of the trial.

■■■ To establish a *Brady* violation, a defendant must show (1) the government possessed evidence favorable to the defendant;[4] (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed. *United States v. Meros,* 866 F.2d 1304 (11th Cir. 1989). *See* 8 Moore's Federal Practice ¶ 16.06[1] (1995). The *Brady* rule does not apply to evidence the defendant could have obtained with reasonable diligence. *Meros*; *United States v. Boling,* 869 F.2d 965 (6th Cir.1989); *United States v. Valera,* 845 F.2d 923 (11th Cir.1988); *United States v. Newman,* 849 F.2d 156 (5th Cir.1988). *See* 8 Moore's Federal Practice at ¶ 16.06[1]; 2 Orfield's Criminal Procedure Under the Federal Rules ¶ 16.12 (2nd ed.1985). Sievers's newly-discovered-evidence challenge and his *Brady* claim fail for the same reason—his failure to obtain the second letter before trial was due to his own lack of diligence.

■■■ In February 1994, Sievers filed a demand with the prosecution for the production of Nell's medical records at St. Alexius. However, the State did not possess those medical records. At an April 11 hearing, Sievers informed the court that discovery had "been dragging a little" and indicated "Social Services and hospitals ... [were] stonewalling." The State responded that Sievers could look at its file to determine what information he wanted and advised that, if necessary, it would help get a court order to obtain information from other sources. On May 9, the State furnished Sievers with documents from Golden Valley County Social Services that said that Nell had told St. Alexius personnel that her foster brother "did the same thing to me Dad did." In June 1994, the State gave Sievers a "treatment summary report" by Nell's therapist, Mary Ann Brauhn, that recited Nell's allegation of sexual abuse by her foster brother and her recantation of that allegation.

On June 24, 1994, the State wrote to Sievers:

> The pre-trial in this case is approximately three weeks away. In response to your request for production of documents you have been provided the entire file of Golden Valley County Social Services with respect to [Nell]. . . .
>
> You have been provided Authorization For Release of Information forms for the medical vendors, therapists, counselors and guardian ad litem as you requested. As you have been advised, Golden Valley County Social Services does not have the possession, custody and control of all those documents.
>
> * * *
>
> If you feel that the State has not adequately complied with your request for production of documents please let me know in advance of the pre-trial conference. My review of the file indicates that there has been full and complete disclosure to the best of the State's ability.

At the pre-trial conference on July 14, 1994, Sievers acknowledged that he was aware of Nell's allegation of sexual abuse by her foster brother. At that time, the State again advised Sievers that it did not have Nell's medical records from St. Alexius, but said that it would help get any requested

---

4. *Brady* and its descendents apply to evidence possessed by the government, including prosecutorial and investigatory personnel. 8 Moore's Federal Practice ¶ 16.06[1] (1995); *United States v. Meros,* 866 F.2d 1304 (11th Cir.1989). Generally, the government has no affirmative obligation to discover potentially exculpatory evidence that it neither possesses, nor knows about. *E.g., Meros*; *United States v. Dunn,* 851 F.2d 1099 (8th Cir.1988). *See* 8 Moore's Federal Practice at ¶ 16.06[1].

Relying on NDCC ch. 50–25.1 [Child Abuse and Neglect], Sievers asserts the State would have been aware of, and would have had possession of, the second letter if it had properly investigated Nell's allegations of sexual abuse by her foster brother. Because we conclude Sievers's failure to discover the letter until after his trial was from his own lack of diligence, we do not decide whether the State "possessed" the letter under *Brady*.

authorizations for the release of that information.

Finally, on July 22, 1994, about two weeks before trial, Sievers asked St. Alexius for Nell's medical records. On July 27, St. Alexius informed Sievers that, in order to release the records, it needed signed releases from the appropriate social service agency and Nell's biological mother. After getting those releases with help from the State, Sievers received Nell's medical records from St. Alexius on August 18, one week after the trial. Those records referred to a letter written by her that accused her foster brother of sexual abuse; however, the letter was not in her records, and after further inquiry, Sievers received the letter from St. Alexius on August 30, 1994.

 A defendant who is aware of information before trial and fails to conduct further inquiry that would have led to the evidence that he asserts is "newly discovered" cannot claim due diligence. *See Thiel; State v. Skaro*, 474 N.W.2d 711 (N.D.1991). Here, Sievers was aware of the substance of the letter more than two months before his August 1994 trial began, and his failure to obtain the letter was due to a lack of diligence.

 Moreover, a defendant cannot seek a new trial for newly discovered evidence simply to employ a different trial strategy. *United States v. Beasley*, 582 F.2d 337 (5th Cir.1978); *United States v. Alberici*, 618 F.Supp. 660 (E.D.Pa.1985). *See* 3 Wright, Federal Practice and Procedure § 557 (1982). Here, Sievers knew about the substance of the letter and asked Nell at trial about the accusation against her foster brother. But Sievers never asked Nell if that accusation was false, apparently as a matter of trial tactics.

When Sievers asked Nell about her accusation against her foster brother at trial, the court overruled the State's relevancy objection. The court also warned Sievers that, if he questioned Nell about any false allega-

tions of sexual abuse, the court would allow the State to ask Nell if she had ever made any allegations that were true. This, of course, would have opened the door for testimony about Sievers's prior convictions for conduct involving Nell. *See* fn. 2. Sievers then asked Nell if she had ever told anyone else that her foster brother had sex with her, but Sievers never asked her if the allegation about her foster brother was false.

In denying Sievers's motion for a new trial, the court concluded that discovery of the second letter did not warrant a new trial because, before trial, Sievers was aware of Nell's accusation against her foster brother and cross-examined her about that accusation. The court ruled that "[a]lthough it may be newly-discovered that the child wrote [the accusation] out, it is not newly discovered that the child made these accusations, nor is there any indication the prosecution withheld this written statement from the defense." We agree with the trial court. Sievers's failure to obtain the "newly discovered" letter was due to a lack of diligence, *see Thiel; Skaro*, and he is not entitled to a new trial to employ different trial tactics. The trial court's denial of Sievers's motion for a new trial to use the "newly discovered" letter was not arbitrary, unconscionable, or unreasonable, and thus was not an abuse of discretion.

## VI

Sievers argues the trial court committed obvious error in instructing the jury, without objection by either party, that "each witness is presumed to have told the truth."[5] He relies on *State v. Austin*, 520 N.W.2d 564 (N.D.1994), and *State v. Thompson*, 504 N.W.2d 838 (N.D.1993). The State agrees the "presumption of truthfulness" instruction was incorrect, but argues it was not obvious error.

In *Thompson*, the defendant did not testify at trial and objected to this same "presumption of truthfulness" instruction. We ruled

---

5. The parties do not dispute that, in assembling the final jury instructions, the trial court inadvertently and unintentionally inserted this outdated pattern jury instruction:

 If you find a conflict in the evidence you should reconcile it, if you can, because each witness is presumed to have told the truth. If you cannot do so, you have the right to determine whom of the witnesses you will believe, in whole or in part.

that, in a criminal case, the instruction was erroneous because it impinged upon a non-testifying defendant's presumption of innocence and invaded the province of the jury to determine witness credibility. We held that the erroneous instruction was not harmless error, and we reversed the defendant's conviction. In *Austin,* the defendant testified at trial and did not object to the same "presumption of truthfulness" instruction. We held that giving the instruction in that case did not constitute obvious error.

 Here, Sievers did not object to the "presumption of truthfulness" instruction. The evidence presented at trial was diametrically oppositional: Nell testified Sievers committed the sexual acts, and Sievers testified he did not. Their testimony created a direct conflict in the evidence and, under the instruction, the jury was advised that it had the right to determine which witness to believe. The instruction did not impinge upon a non-testifying defendant's presumption of innocence, nor did it invade the province of the jury to determine witness credibility. Under *Austin* and the circumstances of this case, we hold that the trial court's inadvertent use of the "presumption of truthfulness" instruction was not obvious error.

### VII

Sievers argues that his two convictions are for the same crime, or at least a greater and a lesser-included crime, thereby violating the double jeopardy clauses of the State and Federal Constitutions.

 Sievers was charged with one count of gross sexual imposition for committing a sexual act by causing sexual contact between his penis and Nell's mouth, and one count of gross sexual imposition for committing a sexual act by causing sexual contact between his penis and Nell's vulva.[6] *See* fn.1. Although Sievers was convicted of both counts of gross sexual imposition, each conviction arose from evidence of a different sexual act, *i.e.,* oral and vaginal sex. *See City of Fargo v. Hector,* 534 N.W.2d 821 (N.D.1995). Since Sievers's convictions rested on two separate sexual acts, his double jeopardy argument is meritless.

### VIII

Sievers argues that the cumulative effect of all of the alleged errors requires a new trial. In view of our individual dispositions of the assortment of issues raised in his appeal, we conclude that the trial court did not abuse its discretion in denying his motion for a new trial under this theory.

We affirm the trial court's order denying Sievers's motion for a new trial.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and LEVINE, JJ., concur.

6. NDCC 12.1–20–02 says:

 *Definitions.* In sections 12.1–20–03 through 12.1–20–12:

 \* \* \*

 3. "Sexual act" means sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, or the mouth and the vulva; ...

 4. "Sexual contact" means any touching of the sexual or other intimate parts of the person for the purpose of arousing or satisfying sexual or aggressive desires.