STATE of North Dakota, Plaintiff
and Appellee

v.

Selmer Allen SMAAGE, Defendant
and Appellant.

Cr. No. 950308.

Supreme Court of North Dakota.

May 14, 1996.

Rehearing Denied June 27, 1996.

Joel F. Arnason, Arnason Law Office, Grand Forks, for defendant and appellant.

Terence P. Devine, State's Attorney, Lakota, for plaintiff and appellee.

MARING, Justice.

Selmer Allen Smaage appeals a criminal judgment entered upon a jury verdict finding him guilty of negligent homicide. We affirm.

On December 9, 1993, Smaage was driving with his father on a rural Nelson County road. The day was snowy and windy. Smaage attempted to make a left turn onto a side road. He waited for a delivery truck to clear the opposite lane, and turned after it had passed. A pickup truck that had been following the delivery truck hit the passenger side of Smaage's vehicle. Smaage's father was killed in the collision.

Highway patrol officer Delbert Johnston spoke with Smaage at the scene, determined he was intoxicated, and placed him under arrest for driving under the influence. An ambulance transported Smaage to a hospital where staff treated him for minor injuries and drew a blood sample for alcohol testing. Johnston then sought to release Smaage, but none of Smaage's family members were willing to take responsibility for him. Johnston, therefore, transported Smaage to the Lake Region Law Enforcement Center where Smaage was admitted on an eighteen-hour detoxification order.

Smaage's family members requested that Smaage be confined until after his father's funeral. Acting on this request, the doctor who treated Smaage after the crash submitted a statement to the law enforcement center indicating that Smaage needed to be detained for a psychiatric evaluation. Smaage was eventually released to his family after his father's funeral—more than ninety hours after his initial detention.

Blood tests showed Smaage had a .20 blood alcohol content after the crash. In January 1994, he was charged with negligent homicide for causing his father's death. Smaage pled not guilty to the charge and requested a jury trial. In a pretrial motion, Smaage argued he could not obtain a fair trial in Nelson County and sought a change of venue. In a second motion, he alleged he was illegally confined after his arrest and sought dismissal of the charges. The trial court denied both motions.

Smaage's jury trial was held in July 1995. The jury found him guilty of negligent homicide. In September 1995 the court entered judgment against Smaage and sentenced him to five years supervision by the Department of Corrections.

On appeal, Smaage argues:

1) The trial court erred in denying his request for a change of venue;

2) He was denied his right to a fair and impartial jury;

3) The trial court erred in denying his motion to dismiss based on his improper detention after the collision;

4) The trial court improperly instructed the jury on alcohol-related offenses.

■ Smaage first argues the trial court abused its discretion in denying his motions for a change of venue. Smaage claims the community was biased and prejudiced against him. Smaage moved for change of venue pretrial, and again after voir dire of the jurors. The trial court denied Smaage's change of venue motions.

■ Rule 21(a), N.D.R.Crim.P., allows change of venue based on "prejudice in the county or municipality." A motion for change of venue is addressed to the sound discretion of the trial court, and we will not reverse a trial court's decision on venue absent a showing of abuse of discretion prejudicial to the defendant. *State v. Breding*, 526 N.W.2d 465, 468 (N.D.1995). "A defendant seeking a change of venue under Rule 21(a) bears the burden of demonstrating a reasonable likelihood of prejudice so pervasive that a fair and impartial jury could not be found." *State v. Austin*, 520 N.W.2d 564, 566 (N.D. 1994).

Smaage asserts he had a wide reputation in sparsely populated Nelson county for being a drunk, and that it was widely known alcohol was a factor in the fatal crash. Smaage argues the trial court abused its discretion in denying his motion to change venue because any jury in the county would be biased against him based on knowledge of his reputation and of the accident.

■ Smaage, however, has not supported his assertions with facts. He did not submit any evidence of his reputation in the community or of the community's knowledge of the crash when he filed his pre-trial motion to change venue. When he renewed his motion after voir dire, Smaage supported his request with information obtained from jury questionnaires and voir dire. The record shows potential jurors had some knowledge of Smaage and of the crash. Nevertheless, Smaage made no showing that potential jurors were biased or prejudiced against him.[1] When a trial court considers a motion to change venue, "the ultimate question ... is whether it is impossible to select a fair and impartial jury." Rule 21, N.D.R.Crim.P. (Explanatory Note). We conclude Smaage failed to meet his burden of showing a reasonable likelihood of prejudice so pervasive as to make selecting a fair and impartial jury impossible. Therefore, the trial court did not abuse its discretion in denying Smaage's motion to change venue.

Smaage next argues he was denied his right to a fair and impartial jury because the trial court overruled his challenges for cause against three jurors who were eventually empaneled. Smaage alleges two of the jurors he challenged should have been excused for actual bias and the other for implied bias.

■ Persons accused of crimes have a right under the Sixth Amendment of the federal constitution, as applied to the states through the Fourteenth Amendment, to a trial by an impartial jury. *City of Bismarck v. Holden*, 522 N.W.2d 471, 473 (N.D.1994). The Sixth Amendment, however, does not prescribe a specific test for determining whether a juror is impartial. *State v. McLain*, 301 N.W.2d 616, 620 (N.D.1981). Under Rule 24(b)(2), N.D.R.Crim.P., judges are required to excuse jurors if grounds for a challenge for cause, such as juror impartiality, are present. We review a trial court's decision on whether to excuse a juror for cause under an abuse of discretion standard. *Holden*, 522 N.W.2d at 473.

■ Under section 29–17–35, N.D.C.C., a party may challenge a juror for cause based on actual bias or implied bias. *See McLain*, 301 N.W.2d at 622. Actual bias is "[t]he existence of a state of mind on the part of the juror ... that he cannot try the issue impartially without prejudice to the substantial rights of the party challenging." N.D.C.C. § 29–17–35(2). Implied bias exists in certain legally specified circumstances, which are listed in section 29–17–36, N.D.C.C.

■ Smaage asserts that two of the jurors eventually empaneled in his case should have been excused based on actual bias. Smaage claims both these jurors were biased because they had knowledge of Smaage's reputation for drinking. Smaage, however, made no showing that these jurors were not impartial, and we can find no specific evidence of bias on the part of these jurors in the record. As we explained in *McLain*, 301 N.W.2d at 623:

> "Although a defendant is entitled to a panel of impartial jurors, qualified jurors need not be totally ignorant of the facts and issues involved in a case. A distinction must be made between mere familiarity with the defendant or his past and an actual predisposition against him...."

Because there is no evidence in the record that the jurors Smaage challenged for actual bias had an "actual predisposition against him," we conclude the trial court did not abuse its discretion in declining to excuse these jurors for cause.

■ Smaage insists the trial court erred in refusing to excuse a third juror Smaage challenged for cause. He claims this juror was impliedly biased under section 29–17–36(2), N.D.C.C., because she had an attorney-client relationship with Terence Devine, the prosecutor. *See also* N.D.C.C. 28–14–06(3). The record shows the juror had her income tax done by a tax preparer in Devine's office and that Devine had handled her father-in-law's estate and some farm leases to which her husband was a party. The record also shows that the juror was not "on retainer"

---

1. There is no transcript of voir dire in the record of this case. Smaage relies on a transcript of a colloquy between the trial judge and the attorneys when he argues that voir dire revealed bias among the potential jurors. Our review is limited to the record and this review is handicapped by the absence of a voir dire transcript.

with Devine at the time of the trial, and that the work Devine did for her relatives had been done in the past. Given that the juror never had a direct attorney-client relationship with Devine, and that any relationship with Devine had ended by the time of trial, we conclude the trial court did not abuse its discretion in declining to excuse the challenged juror for implied bias.

■ Smaage next asserts he was illegally confined after the crash. He claims the illegal detention prevented him from finding a key witness to the crash, thereby prejudicing his defense. Smaage argues the trial court abused its discretion in refusing to grant his motion to dismiss for illegal confinement.

Evidence in the record shows Smaage was intoxicated after the crash. Intoxicated persons may be detained under some circumstances. Section 5–01–05.1, N.D.C.C., requires, in part, that:

"A peace officer has authority to take any apparently intoxicated person to the person's home, to a local hospital, to a detoxification center, or, whenever that person constitutes a danger to that person or others, to a jail for purposes of detoxification. A duly licensed physician of a local hospital or a licensed addiction counselor of a detoxification center has authority to hold that person for treatment up to seventy-two hours. That intoxicated person must not be held in jail because of intoxication more than twenty-four hours."

Evidence in the record shows that Officer Johnston took Smaage to the Lake Region Correctional Facility because none of Smaage's family members would take custody of him. Johnston had Smaage admitted to the facility at 5:30 p.m. on December 9, 1993, under an eighteen hour detoxification order. Evidence in the record also shows that Dr. Nathan B. Hagen, acting at the urging of Smaage's family, requested that the Lake Region Correctional Facility hold Smaage for a psychiatric examination. Dr. Hagen submitted this request at 5:00 p.m. on December 9, 1993. No psychiatric examination was completed during Smaage's detention, and Smaage was eventually released to his mother.

■ Smaage does not challenge the validity of his detention under the eighteen hour "detox order." He argues, however, that he should have been released when the order expired. It is not clear from the record how long Smaage was detained after the crash, but the parties agree it was for more than ninety hours. The State argues additional detention beyond the initial eighteen hour order was proper under section 5–01–05.1, N.D.C.C., which allows doctors to detain intoxicated persons for "treatment" for up to seventy-two hours. There is no evidence in the record, however, that Smaage received any "treatment" while detained. Instead, the record suggests that Dr. Hagen requested that Smaage be detained for the convenience of Smaage's family. Furthermore, even if Smaage had been treated, he was detained for more than seventy-two hours after Dr. Hagen submitted the detention request—beyond the time allowed by section 5–01–05.1, N.D.C.C.

■ Section 5–01–05.1, N.D.C.C., does not authorize the warehousing of intoxicated persons (or unwanted family members) in our state's correctional facilities. It allows the jailing of intoxicated persons under limited circumstances and for a limited time. It allows doctors to hold intoxicated persons "for treatment" for a limited time. The record suggests that Smaage was initially confined according to the requirements of section 5–01–05.1, but that he was held beyond the time limits of the statute by correctional facility personnel. We do not endorse such conduct. Illegal detention does not ordinarily provide a basis for dismissing a complaint. *State v. DuPaul*, 509 N.W.2d 266, 271 (N.D. 1993). Dismissal may be an appropriate remedy for illegal detention if the defendant can establish that the detention actually prejudiced the defendant's right to a fair trial. *City of Fargo v. Stutlien*, 505 N.W.2d 738, 744 (N.D.1993). To establish actual prejudice, a defendant must factually link the illegal detention to specific prejudice, such as lost evidence or testimony. *City of Fargo v. Thompson*, 520 N.W.2d 578, 580 (N.D.1994). The lost evidence must be of a kind that would have been helpful to the defense and

significant, and it must have been lost as a direct result of the illegal confinement. *Id.*

Smaage argues he was prejudiced due to the allegedly illegal detention because he lost the opportunity to find an important witness to the crash: the driver of the delivery truck that was in front of the pickup that hit Smaage's car. Smaage claims the truck driver could have given information about whether the pickup was following too closely or driving too fast for the weather conditions. Smaage insists that such information would have been helpful to his defense.

█ We will not reverse a trial court's findings of fact in the preliminary proceedings of a criminal case unless, after we resolve conflicts in the evidence in favor of affirmance, there is not sufficient competent evidence capable of supporting the trial court's findings, or the decision is contrary to the manifest weight of the evidence. *Thompson,* 520 N.W.2d, at 581. Here, the trial court found Smaage had not "been prejudiced in any way with regard to his guarantee of a fair trial in this matter" by his allegedly illegal detention.

We have reviewed the record and are not convinced that Smaage was prejudiced by not being able to present evidence from the truck driver. Regardless of how closely the pickup was following the delivery truck, Smaage had a duty to keep a lookout and remain in the right lane until traffic cleared. *See* N.D.C.C. § 39–10–23 ("The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."). The question of how fast the pickup was driving could have been answered by methods other than the testimony of the truck driver—such as an analysis of the crash scene and vehicles. The evidence the truck driver could have provided, therefore, was not significant.

In addition, Smaage's detention delayed the beginning of his investigation by, at the most, three days. There is no indication in the record that Smaage attempted to track down the truck driver following his release

from jail at any time. There is no indication in the record that the truck driver's evidence was "lost" as a direct result of Smaage's detention. We conclude that the trial court's finding that Smaage was not prejudiced by his detention is supported by sufficient competent evidence and not against the manifest weight of the evidence.

█ Smaage's last argument is that the trial court erred in instructing the jury on the law of driving under the influence of alcohol. Smaage argues such instructions, usually given in driving under the influence cases, should not have been given at his negligent homicide trial.

█ As we explained in *State v. Saul,* 434 N.W.2d 572, 576 (N.D.1989), "jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury." "We review jury instructions as a whole and consider whether they correctly and adequately advised the jury of the law." *State v. His Chase,* 531 N.W.2d 271, 274 (N.D.1995). "If, as a whole, an instruction is erroneous, relates to a central subject in the case, and affects a substantial right of the accused, we will reverse for that error." *State v. Marshall,* 531 N.W.2d 284, 287 (N.D.1995).

Smaage objected to the inclusion of N.D.J.I. 2940(b) and N.D.J.I. 2941 with the jury instructions in his case. N.D.J.I. 2940(b) explains: "A person may not drive a vehicle on a highway ... [if he is] under the influence of intoxicating liquor." N.D.J.I. 2941 explains the meaning of the phrase "under the influence of intoxicating liquor." Smaage does not deny that these instructions correctly state our driving under the influence law. Instead, he argues their use in a negligent homicide trial was improper because they would tend to "mislead or confuse the jury." In particular, Smaage asserts that these instructions may have convinced the jury that, if they found Smaage was driving under the influence of alcohol, they should conclude he was guilty of negligent homicide.

We are not persuaded by Smaage's arguments. We have long held that, although

violation of a statutory duty is not negligence per se, it is evidence of negligence. *Gronneberg v. Hoffart*, 466 N.W.2d 809, 812 (N.D. 1991). We have further held it not to be error for a trial court to instruct on driving under the influence in a negligent homicide case. *State v. Erickson*, 241 N.W.2d 854, 861 (N.D.1976). In Smaage's case, the record shows the trial court gave a thorough instruction on the elements of negligent homicide. In addition to instructing on driving under the influence, the trial court also instructed on the law of left turns and on the general duty of care required of a driver. Taking the instructions as a whole, we can find nothing misleading to a jury. Instead, as we observed in *Erickson*, 241 N.W.2d at 861, the instructions were merely statements of the law used "to instruct the jury as to the rules of the road."

We affirm the judgment of conviction.

NEUMANN, SANDSTROM, MESCHKE, JJ., and VANDE WALLE, C.J., concur.