**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Scott R. THOMPSON, Defendant and Appellant.**

**Criminal No. 950372.**

Supreme Court of North Dakota.

July 24, 1996.

Lonnie W. Olson, State's Attorney, Devils Lake, for plaintiff and appellee.

Scott R. Thompson, pro se, Devils Lake, on brief; argued by Steven Balaban of Dickson Law Office, Bismarck, for defendant and appellant.

MESCHKE, Justice.

Scott R. Thompson appeals from a jury conviction of driving under the influence or with a blood-alcohol concentration of 0.10% or greater. We affirm.

At 1:24 a.m. on January 27, 1995, Ramsey County Deputy Sheriff Craig Dix stopped Thompson for driving eighty-four miles per hour in a zone limited to a speed of fifty-five miles per hour. According to Dix, fog was reducing visibility to between 200 and 400 yards when he stopped Thompson on Highway 20 in rural Ramsey County. While talking with Thompson, Dix detected a "moderate odor of alcohol." After further investigation, Dix arrested Thompson for violating NDCC 39–08–01 by driving impaired. Thompson was taken to the Devils Lake Law Enforcement Center, where an Intoxilyzer test measured his blood-alcohol concentration at 0.16%.

After a trial, a jury found Thompson guilty of driving under the influence or with a blood-alcohol concentration of 0.10% or greater. Thompson appeals.

Thompson argues the trial court abused its discretion by denying his motion to excuse for cause a juror who apparently had been a client of Thompson's law firm. Thompson

concedes there is no evidence in the record showing the challenged juror was actually biased against him. However, Thompson asserts an attorney-client relationship evidences "implied bias" under NDCC 29–17–36(2), and that a trial court *must* excuse a juror when such a relationship is shown. We disagree the trial court abused its discretion by refusing to excuse this juror for cause.

■ A defendant cannot obtain review of a denial of a challenge for cause unless he used all of his peremptory challenges. *City of Bismarck v. Holden*, 522 N.W.2d 471, 473 (N.D.1994); *see also* NDRCrimP 24(b)(1) (listing number of available peremptory challenges). The defendant must also show that the sitting jury was not impartial. *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988) ("So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."); *State v. Tranby*, 437 N.W.2d 817, 824–25 (N.D.), *cert. denied*, 493 U.S. 841, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989). Here, Thompson used all of his peremptory challenges, and he also questioned the partiality of one of the sitting jurors.

A trial judge must excuse a juror if the judge "is of the opinion that grounds for challenge for cause are present." NDRCrimP 24(b)(2). A "for cause" challenge can be based on either actual or implied bias. NDCC 29–17–35; *see State v. McLain*, 301 N.W.2d 616, 622 (N.D.1981). "Actual bias" is the "existence of a state of mind on the part of the juror, with reference to the case or to either party, ... that he cannot try the issue impartially without prejudice to the substantial rights of the party challenging." NDCC 29–17–35(2). If the trial court does not believe a juror is actually biased, the court may still excuse the juror for an "implied bias" if one of the exclusive "causes" in NDCC 29–17–36 exists.

■ We review a trial court's decision not to excuse a challenged juror for cause under an abuse-of-discretion standard. *Holden*, 522 N.W.2d at 473. As we explained in *State v. Sievers*, 543 N.W.2d 491, 494 (N.D.1996), a trial court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner.

■ An attorney-client relationship is one of the exclusive "causes" of an implied bias that warrants dismissal of a juror. NDCC 29–17–36(2); *see also* NDCC 28–14–06(3). The trial court denied Thompson's motion to excuse a juror who apparently had been a client of Thompson's law firm. Our review of the trial court's decision, however, is severely hampered because the parties agreed to waive the recording of the jury voir dire. Consequently, the only description of this relationship in the record is the characterizations in an exchange between Thompson's attorney and the State's Attorney:

MR. DICKSON: Yes, your Honor. We made several requests for strikes for cause which were denied by the Court. Lastly, we made—we renewed our request to strike Mrs. Anderson for cause on the grounds she was a client of Thompson and Thompson. The reason we were then forced to exercise our last [peremptory] strike to strike Mrs. Anderson rather than Mrs. Lang who is Bible Baptist. Again, the consumption [of] alcohol is against her religious beliefs, and if we had been granted a strike for cause, we would have struck Mrs. Lang. My client has been unfairly prejudiced by denying that strike for cause.

THE COURT: Mr. Olson?

MR. OLSON: Just in response to that, I can't see how the defense can claim that a former client of theirs prejudices them. If anything, it would prejudice against the State....

We recently held that a trial court does not abuse its discretion by denying an implied bias challenge under NDCC 29–17–36(2) when the record fails to show a direct and current client relationship of a juror with the attorney for the opposite party. *See State v. Smaage*, 547 N.W.2d 916, 919–20 (N.D.1996); *see also State v. Raywalt*, 436 N.W.2d 234, 239 (N.D.1989) ("Where the record is incomplete, the appellant must suffer the consequences of any lack of evidence in the record to support his contention."). Like in *Smaage*, this record does not show a direct

attorney-client relationship ever existed between juror Anderson and Thompson, or show Anderson was a client of the law firm at the time of the trial. Rather, this record indicates Anderson was a former client of another attorney in the defendant's law firm.

The trial court had the benefit of listening to voir dire before it denied Thompson's motion to excuse juror Anderson for implied bias. Because we presume that the trial court's decision to deny the motion was correct, Thompson has the burden "to show affirmatively by the record that the ruling was incorrect." *Raywalt*, 436 N.W.2d at 239. While it may be better in some cases to substitute one impartial juror for another when there is an assertion of bias, this record does not demonstrate the trial court abused its discretion by denying the motion to excuse juror Anderson for cause.

■ Thompson argues the trial court abused its discretion by allowing the jury to hear evidence he had been the driver in a one-car accident about two years before this arrest. Although we agree, we decline to reverse the conviction because, under NDRCrimP 52(a), the error was harmless.

During the State's direct examination of Deputy Dix, and over Thompson's objection, the jury heard this testimony:

[MR. OLSON:] How do you know that Mr. Thompson is familiar with the deer in the area on the road?

[DEPUTY DIX:] Approximately two years prior to ... this incident, I worked an accident where Mr. Thompson had rolled his vehicle, and had said that he had swerved to miss a deer up on Highway 17.

[MR. OLSON:] About how many miles away from this would this be?

[DEPUTY DIX:] I would say 10 to 15 miles.

We agree with Thompson that this testimony was improperly admitted under NDREv 404(b).[1]

NDREv 404 governs the admissibility of character evidence. Subsection (a) states the general rule that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," and allows three specific exceptions. Subsection (b) restates the general rule in the specific context of "other crimes, wrongs, or acts," but permits such evidence to be admitted for "other purposes" after proper notice:

> **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Under this subsection, Thompson's prior car accident was clearly an "act."

The State argues the evidence of the prior accident was not improper character evidence under NDREv 404(b). Instead, the State asserts it offered the testimony to help prove, by showing Thompson knew there could be deer in the area, that Thompson was under the influence of alcohol at the time of the stop:

> The State argued the fact that [Thompson], based upon his consumption of alcohol, which was smelled by the officer, did not possess the clearness of intellect that he would ordinarily possess, due to the fact that he was travelling 84 miles per hour in a 55 mile per hour zone through thick fog limiting visibility to one eighth to one quarter of a mile, in an area that he would know that there could be deer on the roadway.

---

1. Thompson also argues this testimony was "highly prejudicial" because it "was not offered to show that there were deer in the area, but was offered to show that [he] had rolled his vehicle supposedly because he was under the influence approximately [two] years before." The record does not support this assertion.

The State correctly recognizes that NDREv 404(b) allows evidence of a prior act "for other purposes, such as proof of ... knowledge." However, evidence of a prior act is only admissible for "other purposes" if the State gives "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature" of the prior act. NDREv 404(b); *see also Raywalt*, 436 N.W.2d at 238 (requiring trial court to also determine, under NDREv 403, whether danger of unfair prejudice substantially outweighs probative value of evidence). Here, the State did not give any advance notice that testimony of the prior accident would be offered, and there is no indication the trial court "excuse[d] pretrial notice on good cause shown."

The State argues it did not have a duty to disclose the information before trial because, as the trial court ruled, Thompson's NDRCrimP 16 discovery request was untimely. Unlike the corresponding Federal rule, however, NDREv 404(b) "does not place the burden of requesting notice upon the accused." NDREv 404, Explanatory Note. *Compare* FREv 404(b) ("provided that *upon request by the accused*, the prosecution in a criminal case shall provide reasonable notice ...." (emphasis added)). The State's duty to give advance notice of any NDREv 404(b) evidence it intended to introduce at trial arose independent of Thompson's untimely discovery request. Under these circumstances, therefore, we conclude the trial court abused its discretion by admitting this evidence.

However, we do not believe this error warrants reversal of Thompson's conviction. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." NDRCrimP 52(a). Accordingly, we must decide if the "error was so prejudicial that substantial injury oc-

curred and a different decision would have resulted without the error." *State v. Eugene*, 536 N.W.2d 692, 696 (N.D.1995); *see State v. Murchison*, 541 N.W.2d 435, 442–43 (N.D.1995). If not, the error is "harmless" under NDRCrimP 52(a) and not grounds for reversal.

The car accident was only briefly mentioned twice during the trial, and its prejudicial effect as improper character evidence would be slight because the accident was unlike the charged crime. It is unlikely the jury inferred, because Thompson swerved to miss a deer and rolled his car two years before this stop, that he must have been driving under the influence or with a blood-alcohol concentration of 0.10% or greater at the time of this stop. Moreover, the other evidence against Thompson, particularly the Intoxilyzer test result of 0.16%, was strong.

Thompson has not convinced us "a different decision would have resulted" without the brief references to the car accident. *Eugene*, 536 N.W.2d at 696. Therefore, we conclude it was harmless error for the trial court to allow the jury to hear evidence of the car accident.

We affirm Thompson's conviction.

VANDE WALLE, C.J., SANDSTROM, J., and ALLAN L. SCHMALENBERGER and GAIL HAGERTY, District Judges.

GAIL HAGERTY, District Judge, sitting in place of NEUMANN, J., and ALLAN L. SCHMALENBERGER, District Judge, sitting in place of MARING, J., disqualified.