2000 ND 148

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Bruce Lynn ENTZI, Defendant and Appellant.**

No. 990329.

Supreme Court of North Dakota.

July 24, 2000.

· Terry W. Elhard, State's Attorney, Ashley, for plaintiff and appellee.

Monte L. Rogneby, Vogel Law Firm, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Bruce Lynn Entzi appealed the final judgment entered upon jury verdicts finding him guilty of two counts of gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(2)(a). We affirm the verdicts, but remand for resentencing in the county where the trial was held.

[¶ 2] After a jury trial in McIntosh County, Entzi was found guilty of two counts of gross sexual imposition for engaging in sexual contacts with two of his daughters, who were less than 15 years of age. After a sentencing hearing in Burleigh County, Entzi was sentenced to imprisonment and supervised probation. Entzi appealed, and has raised a number of issues on appeal.

I

.[¶ 3] Entzi contends he is entitled to a new trial, because the trial court did not conduct voir dire on the record, making a transcript of the jury selection unavailable.

[¶ 4] In his statement of the record under N.D.R.App.P. 10, Entzi asserted, among other things, he did not request jury selection be conducted off the record,

he did not waive his right to have jury selection conducted on the record, he believes his trial attorney requested jury selection be conducted on the record, and his trial attorney does not remember discussing whether jury selection was on the record and assumed jury selection was being recorded. The State objected, asserting, among other things:

> The undersigned prosecutor is fairly certain that defense counsel did not request that the jury selection be recorded by the court reporter. He certainly made no objections to the jury selection not being recorded.

[¶ 5] In its statement and approval of the record under N.D.R.App. P. 10, the trial court stated "voir dire was conducted off the record," and said:

> Immediately before trial, a conference was held in chambers. The conference was on the record. All parties and counsel were present. Whether jury selection would be recorded was not referred to or discussed in any way by either party or the court.

[¶ 6] Reliance on cases like *State v. Hapip*, 174 N.W.2d 717 (N.D.1969); *State v. Decker*, 181 N.W.2d 746 (N.D.1970); *Ranes Motor Co. v. Thompson*, 251 N.W.2d 741 (N.D.1977); *State v. Spiekermeier*, 256 N.W.2d 877 (N.D.1977); *State v. Perry*, 136 Wis.2d 92, 401 N.W.2d 748 (1987); and *Hoagland v. State*, 518 N.W.2d 531 (Minn.1994), dealing with the unavailability of a record of such things as guilty pleas, trial evidence of guilt or innocence, and restitution evidence, is misplaced. We have specifically addressed nonevidentiary proceedings, and have held one must request recording.[1] *Fenske v. Fenske*, 542 N.W.2d 98 (N.D.1996) (holding failure to record closing arguments was not reversible error when the complaining party did not request recording or object to the lack of recording); *State v. Kunkel*, 366 N.W.2d 799 (N.D.1985) (stating parties who want

events recorded must request the court reporter to record them); *State v. Rougemont*, 340 N.W.2d 47 (N.D.1983) (holding failure to record voir dire and arguments of counsel is not per se reversible error).

[¶ 7] As the court in *Hoagland v. State*, 518 N.W.2d 531, 535 (Minn.1994), observed, "a transcript is important to, but not always essential for, a meaningful appeal."

Where the record includes a complete transcript of the evidentiary portion of the trial, the appellant's "constitutional right to a judicial review of all evidence" has not been compromised. *State v. Thomas*, 92–1428 (La.App. 4th Cir.5/26/94), 637 So.2d 1272, *writ denied*, 94–1725 (La.11/18/94), 646 So.2d 376, *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995). As to other untranscribed portions of the record, where there were no contemporaneous objections, the errors were not preserved for appeal. *State v. Harrison*, 627 So.2d 231, 233 (La.App. 4th Cir. 1993).

*Louisiana v. Richards*, 750 So.2d 330, 332–33 (La.Ct.App.1999).

[¶ 8] We conclude the trial court's failure to conduct voir dire on the record does not alone entitle Entzi to a new trial.

II

[¶ 9] Entzi contends the trial court conducted jury selection improperly, arguing his right to exercise peremptory challenges was violated because the court improperly refused to excuse two jurors for cause, the jury selection method used violated his right to exercise peremptory challenges, and the jury selected included jurors who should have been excused for cause.

---

1. Rule 11(f), N.D.R.Crim.P., however, requires a verbatim record of proceedings at which a defendant enters a plea.

## A

[¶ 10] Under N.D.C.C. § 29–17–33 and N.D.R.Crim.P. 24, a juror may be excused for cause. Under N.D.R.Crim.P. 24, each side is entitled to exercise peremptory challenges. Entzi contends the court refused to excuse two jurors for cause, and he "was forced to use two of his peremptory challenges to bump these biased jurors," thereby prejudicing his right to exercise peremptory challenges. Entzi has not alleged he objected to the denial of challenges for cause to the jurors he used peremptory challenges to excuse. Thus, that issue has not been preserved for review. A defendant's right to peremptory challenges is denied or impaired only if the defendant does not receive what state law provides. *City of Dickinson v. Lindstrom,* 1998 ND 52, ¶ 17, 575 N.W.2d 440. Entzi received the peremptory challenges our law provides. Furthermore, the United States Supreme Court has recently rejected an argument like Entzi's. In *United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 777, 145 L.Ed.2d 792 (2000), the Supreme Court recognized peremptory challenges are not of constitutional dimension, but "are one means to achieve the constitutionally required end of an impartial jury," and held "that if the defendant elects to cure" a trial court's erroneous refusal to excuse a potential juror for cause, "by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." We hold a party's right to exercise peremptory challenges is not violated if the party uses a peremptory challenge to exclude a juror the trial court refused to excuse for cause, and no biased jurors sit. We, therefore, conclude Entzi's right to exercise peremptory challenges was not violated.

## B

[¶ 11] The trial court used the following jury selection process:

THE COURT: … .My intention is to call twelve persons up and go through the selection process and then whoever is picked will stay and then however many more we need. I probably don't need to tell you guys this but some people have confusion about it, with regard to the exercise of peremptories themselves, if you pass a panel, then you're done with that panel. You can't go back and re-strike somebody, so if you pass, you pass.

Entzi contends this method unreasonably restricted his ability to exercise his peremptory challenges.

[¶ 12] Entzi asserts that, although his trial attorney did not object to the selection procedure, "this court should still review this issue as the trial court's method is plain error. N.D.R.Crim.P. 52(b)." "We cautiously exercise our power to notice obvious error only in exceptional situations in which a defendant has suffered serious injustice." *State v. Freed,* 1999 ND 185, ¶ 14, 599 N.W.2d 858. This is not such a case. "Generally, a trial court has broad discretion in selecting a method by which it impanels a jury, and it is enough if the chosen method permits the defendant to exercise peremptory challenges free from embarrassment and intimidation." *City of Dickinson v. Lindstrom,* 1998 ND 52, ¶ 11, 575 N.W.2d 440. Entzi has not shown the trial court abused its discretion in fixing the selection procedure.

## C

[¶ 13] Entzi contends the trial court abused its discretion by failing to excuse four jurors for actual or implied bias.

[¶ 14] Persons accused of crimes have a right to trial by an impartial jury. *State v. Smaage,* 547 N.W.2d 916, 919 (N.D.1996). Under N.D.R.Crim.P. 24(b)(2), judges must excuse a juror if grounds exist for a challenge for cause, such as juror partiality. *Id.* To succeed in an appellate review of a trial court's denial of a challenge for cause, a defendant must

"show that the sitting jury was not impartial." *State v. Thompson*, 552 N.W.2d 386, 388 (N.D.1996). "We review a trial court's decision not to excuse a challenged juror for cause under an abuse-of-discretion standard." *Id.* "[A] trial court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner." *Id.* "Because we presume that the trial court's decision to deny the motion [to excuse a juror for cause] was correct, [Entzi] has the burden 'to show affirmatively by the record that the ruling was incorrect.'" *Id.* at 389, quoting *State v. Raywalt*, 436 N.W.2d 234, 239 (N.D.1989).

[¶ 15] Although Entzi has asserted the trial jury included jurors who should have been excused for cause, as in *State v. Smaage*, 547 N.W.2d 916, 919 (N.D.1996), Entzi "made no showing that these jurors were not impartial, and we can find no specific evidence of bias on the part of these jurors." We conclude the trial court did not abuse its discretion in declining to excuse these jurors.

### III

[¶ 16] Entzi contends the trial court improperly denied his motion in limine to preclude the State from introducing as evidence a tape recording of a telephone conversation between Entzi and his wife about Entzi's alleged sexual misconduct with three daughters and a niece.

[¶ 17] The trial court denied Entzi's motion on July 6, 1999. On August 2, 1999, the trial court issued another order about the tape recording:

I have reconsidered [m]y Order regarding use of the audiotape recording of the telephone call between the defendant and LeeAnn Entzi. I believe the tape is admissible in a redacted form to avoid undue prejudice to the defendant. I have attached a copy of the transcript on which I have indicated what must be redacted by lining out and initialing. If the State intends to introduce a copy of the tape, an edited version will be made and reviewed with counsel for the defen-

dant before trial. The transcript provided the jury will be edited as well. If the defendant should argue to the jury that he was referring to something other than sexual contacts when referring to the victims in this case, the State will be allow to play the unedited version of the tape as rebuttal to provide context.

On August 11, 1999, Entzi, his attorney, and the State's Attorney executed a stipulation providing, in part:

Whereas, negotiations have resulted in an agreement with the McIntosh County State's Attorney that in lieu of the prosecution offering an edited version of the tape and transcript of the February 26, 1998 telephone conversation as evidence, the Defendant will stipulate that he admitted to his wife that he had inappropriate sexual contact with [two of his daughters].

Neither the redacted tape, nor a transcript, was introduced in evidence at the trial.

[¶ 18] Entzi contends that, even in its redacted form, the tape included hearsay allegations, inadmissible under N.D.R.Ev. 802, of bad acts unrelated to the charges against him, which are inadmissible under N.D.R.Ev. 404. The State contends the trial court should have denied Entzi's motion, and allowed the entire conversation, except for two sentences, to be admitted into evidence.

[¶ 19] Entzi argues that, because of the court's erroneous ruling, his "trial counsel was faced with a dilemma. He could do nothing and the state would introduce the redacted tape and transcript at trial.... Or ... do something to try and keep the jury from hearing the tape." Because Entzi executed the stipulation about the recorded telephone conversation, we need not decide whether the trial court's ruling was correct.

[¶ 20] Entzi was not compelled to stipulate as he did to keep the jury from hearing the tape of his telephone conversation. Entzi could have chosen to object to

admission into evidence of the tape if offered and challenge it on appeal if unsuccessful. Defendants often must choose between strategies. In *State v. Hass*, 264 N.W.2d 464 (N.D.1978), a defendant contended he was unconstitutionally compelled to choose between his right to testify at a probation hearing and his right to remain silent at a later trial regarding the same incident. This Court said: "The fact that Hass was required to make such a choice, regardless of how difficult, did not render his testimony unconstitutionally 'compelled' by the State." *Id.* at 471.

The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. *McMann v. Richardson*, 397 U.S. [759] at 769, 90 S.Ct. [1441] at 1448, [25 L.Ed.2d 763]. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.

*Hass*, at 471–72, quoting *McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). While Entzi was faced with strategy options, "the choice was his." *State v. Dilger*, 338 N.W.2d 87, 92 (N.D.1983). *See also United States v. Martinez–Salazar*, 528 U.S. 304, ——, 120 S.Ct. 774, 781, 145 L.Ed.2d 792 (2000) (holding a defendant's election to use a peremptory challenge after objecting to denial of a for-cause challenge, rather than letting the challenged juror sit and, upon conviction, pursing a challenge on appeal, was the defendant's choice). We conclude Entzi's right to a fair trial was not violated by his choice of trial strategies.

## IV

[¶ 21] Entzi contends the trial court abused its discretion in denying his trial attorney's request for "a continuance based on the termination of his employment at his law firm," and "[t]rial counsel represented to the court that he was not ready to proceed due to unusual circumstances beyond his control."

[¶ 22] Under N.D.R.Ct. 6.1(b), a motion for continuance will be granted only for good cause. *In re J.S.*, 545 N.W.2d 145, 146 (N.D.1996). "A motion for a continuance ... rests in the discretion of the trial court, and its decision will not be set aside on appeal absent an abuse of discretion." *State v. Sievers*, 543 N.W.2d 491, 494 (N.D.1996). "A court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner." *Id.*

[¶ 23] Entzi's trial attorney made a telephonic request for a continuance shortly before the date of trial and made a recorded request on the first day of trial on August 11, 1999. Trial counsel told the court he was terminating employment with his law firm, secretarial services were inconvenient, and he was being required to vacate his offices by 6 p.m. the following Monday. He also asserted:

All this has created a lot of stress for me. I'm not as prepared as I would like to be and ... the main area I'm not prepared for is our defense. I believe I'm adequately prepared to go through the prosecution. I would at least ask for a concession that if the prosecution gets through with its case today that I be allowed to call one or two witnesses, as many at my discretion—one would be a videotape and the other would be another person and then we would rest today and then we would resume again tomorrow at nine with the rest of my defense and give me more time to prepare for that. I believe we'd be able to finish the case by tomorrow anyway if the trial would go that fast.

The trial court denied the motion:

THE COURT: All right. Well with regard to the matter of the continuance, I had given it more thought and I guess I still am going to deny the request basically for two reasons. The first is that this case was filed or the complaint is dated June 8th of '98 so it's over a

year old for one thing and another thing is ... I know now that ... it would be another half a year or more before we could [get] the matter tried. The other thing is that the case had been set for trial previously and I'm assuming, knowing Mr. Fleck is a good lawyer, that he was at least close to prepared at that time when the matter was continued and I would certainly expect that that would be the case now.... Certainly I'm willing to, depending of course on how the trial proceeds, allow some flexibility for Mr. Fleck for some preparation time.

[¶ 24] The original complaint was filed on June 8, 1998. On August 27, 1998, Entzi's trial attorney filed a notice of appearance stating his law firm had been retained to represent Entzi. On February 4, 1999, Entzi's trial attorney filed a notice of appearance stating he would be appearing for Entzi. On February 10, 1999, the parties were notified the trial had been set for July 15–16, 1999. On July 12, 1999, the parties were notified the trial had been rescheduled for August 11–13, 1999. Thus, the trial court could assume that by July 12 Entzi's trial counsel was "close to prepared" for a trial that had been scheduled to begin three days later. The first day of trial began at 8:33 a.m., and concluded at 3:50 p.m. The trial resumed at 9 a.m. on August 12, 1999, and concluded at 12:45 p.m. Entzi's trial attorney got much of what he asked for—the State rested early on the first afternoon of trial, Entzi called a few witnesses that day, started at 9 a.m. the next day, and finished his defense.

[¶ 25] In light of the circumstances and argument presented, we conclude the trial court did not abuse its discretion in denying Entzi's trial attorney's motion for continuance.

## V

[¶ 26] Entzi contends the trial court conducted the sentencing in the wrong county, and he is entitled to a new sentencing.

[¶ 27] Entzi was tried in McIntosh County, the county where the offenses were committed. See N.D.R.Crim.P. 18. On October 5, 1999, Entzi was notified sentencing would be held in Burleigh County on October 12, 1999. By letter of October 8, 1999, Entzi requested his sentencing hearing be held in McIntosh County, "so as to make appearing at the hearing more convenient for his witnesses." The trial court rescheduled the sentencing and ordered it to be held in Burleigh County. Entzi's sentencing hearing was held in Burleigh County on October 19, 1999.

[¶ 28] Sentencing is an important feature of the criminal justice system. We have recognized "[s]entencing is a critical stage of a criminal proceeding," *State v. Phelps,* 297 N.W.2d 769, 776 (N.D.1980), and "the sentencing function is of critical importance in our legal system," *State v. Nelson,* 417 N.W.2d 814, 817 (N.D.1987). " 'The sentencing decision is of paramount importance in our criminal justice system. At sentencing the court seeks to vindicate society's interest in imposing appropriate sanctions against those individuals determined to be criminally culpable.' " *Nelson,* at 817–18, quoting *Pennsylvania v. Knighton,* 490 Pa. 16, 415 A.2d 9, 12 (1980).

[¶ 29] Generally, promoting the convenience of the court is not a significant factor in deciding where a hearing should be held, *Selland v. Selland,* 494 N.W.2d 367, 369 (N.D.1992), but the convenience of witnesses is a factor, *Stonewood Hotel Corp., Inc. v. Davis Dev., Inc.,* 447 N.W.2d 286, 289 (N.D.1989). Entzi made a timely request for a sentencing hearing in McIntosh County, where the trial was properly held. The trial court's refusal of Entzi's request was inconsonant with N.D. Sup.Ct. Admin. R. 6(B), which provides:

It is the intent of the Supreme Court that the residents of the various counties within a judicial district receive judicial services in their own county without the need to travel to the chamber cities.

The judges in the chamber cities shall travel to the counties within their judicial district to provide required services pursuant to the schedule and direction of the presiding judge of the district.

In light of the critical importance of the sentencing function and our preference for local proceedings, expressed in N.D. Sup. Ct. Admin. R. 6(B), we conclude the trial court abused its discretion in refusing Entzi's timely request for a sentencing hearing in McIntosh County and conducting the sentencing in Burleigh County. We conclude Entzi is entitled to a new sentencing hearing.

## VI

[¶ 30] The verdicts are affirmed and the matter is remanded for resentencing in McIntosh County.

[¶ 31] DALE SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., ALLAN L. SCHMALENBERGER, D.J., concur.

[¶ 32] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of KAPSNER, J., disqualified.